**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Chauncy Adam TUCKER (95–1160); Calvin Miller, Jr. (95–1187); and Anthony Darrick McCoy (95–1220), Defendants–Appellants.**

**Nos. 95–1160, 95–1187 and 95–1220.**

United States Court of Appeals,
Sixth Circuit.

Argued March 19, 1996.

Decided July 25, 1996.

Jeffery J. Davis (argued and briefed), Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for the U.S.

Craig A. Frederick (argued and briefed), Grand Rapids, MI, for Chauncy Adam Tucker.

Joseph H. Doele (argued and briefed), Idema & Keyser, Grand Rapids, MI, Craig A. Frederick (argued and briefed), Grand Rapids, MI, Judy E. Bregman (briefed), Bregman & Welch, Grand Haven, MI, for Calvin Miller, Jr.

Joseph H. Doele (argued and briefed), Idema & Keyser, Grand Rapids, MI, for Anthony Darrick McCoy.

Before: LIVELY, MARTIN, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Appellants Chauncy Adam Tucker, Calvin Miller, Jr., and Anthony Darrick McCoy challenge their convictions and sentences arising from their participation in a drug trafficking conspiracy. We find their constitutional claims meritless but reverse those convictions that have to do with using or carrying a firearm during a drug trafficking crime and remand for resentencing on firearm possession and quantity issues.

## I. Background

A federal grand jury in Michigan indicted Robert Maurice Hampton, Jr., and appellants Chauncy Adam Tucker, Calvin Miller, Jr., and Anthony Darrick McCoy on nine counts related to drug trafficking. Count One charged all three appellants with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, also known

as "crack." Counts Three and Four charged Miller and McCoy respectively with possession with intent to distribute crack. Count Five charged Tucker with distribution of cocaine. Counts Six and Seven charged McCoy and Miller with manufacture of and possession with intent to distribute crack within one thousand feet of an elementary school. Counts Eight and Nine charged Miller and McCoy with using and carrying firearms in relation to a drug trafficking crime. Hampton, the conspiracy's ringleader and the focus of Count Two, entered into a plea agreement and testified against the appellants at trial.

The jury returned guilty verdicts against all three appellants on all counts. The district judge sentenced Tucker to 324 months on Count One and 240 months on Count Five, to be served concurrently. Miller received four 360-month concurrent sentences for Counts One, Three, Six, and Seven, and five additional years for Count Eight. McCoy received four 235-month concurrent sentences for Counts One, Four, Six, and Seven, and five additional years for Count Nine. This appeal followed.

## II. Constitutional Issues

The appellants raise several constitutional challenges to their convictions and sentences. First, Miller and McCoy argue that 21 U.S.C. § 860(a) exceeds Congress's power under the Commerce Clause, U.S. Const. art. I, § 8. Second, all three appellants claim that the prosecution violated the equal protection principles embodied in the Due Process Clause of the Fifth Amendment by excluding jurors on the basis of race. Third, Miller contends that his attorney's performance violated his Sixth Amendment guarantee to effective assistance of counsel.

### A. Commerce Clause

21 U.S.C. § 860(a) doubles the maximum punishment for manufacture of and possession with intent to distribute controlled substances under 21 U.S.C. § 841(a)(1) when those activities occur within one thousand feet of a school. Citing *United States v. Lopez*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Miller and McCoy argue

that Congress lacks the power to prohibit such conduct. Although no one raised this argument before the district court, both the appellants and appellees have briefed the issue, and we therefore agree to address this important constitutional claim. *See United States v. Chesney*, 86 F.3d 564, 567–68 (6th Cir.1996) (exercising discretion to address *Lopez* issue not raised below). We note at the outset that several post-*Lopez* cases and dicta in the decision of the court of appeals in *Lopez* reject the appellants' contention. *United States v. Rogers*, 89 F.3d 1326, 1337–38 (7th Cir.1996); *United States v. Clark*, 67 F.3d 1154, 1165–66 (5th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1432, 134 L.Ed.2d 554 (1996), *petition for cert. filed*, No. 95–8936 (U.S. May 9, 1996); *United States v. Salmiento*, 898 F.Supp. 45, 46–48 (D.P.R.1995); *United States v. Garcia–Salazar*, 891 F.Supp. 568, 569–572 (D.Kan.1995); *United States v. Lopez*, 2 F.3d 1342, 1366 n. 50 (5th Cir.1993), *aff'd*, —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

In *Lopez*, the Supreme Court recognized that under the Commerce Clause Congress may regulate three broad categories of activity, including "those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce." —— U.S. at ———— ——, 115 S.Ct. at 1629–30 (citation omitted). The Court held that the Gun–Free School Zones Act of 1990, which criminalized possession of a firearm within one thousand feet of a school, exceeded this constitutional power. *See* —— U.S. at ————————, 115 S.Ct. at 1630–34; Gun–Free School Zones Act of 1990, Pub.L. No. 101–647, § 1702, 1990 U.S.C.C.A.N. (104 Stat.) 4844, 4844–45 (codified at 18 U.S.C. § 922(q)). In reaching this conclusion, the Court noted that firearms possession "has nothing to do with 'commerce' or any sort of economic enterprise." —— U.S. at ————————, 115 S.Ct. at 1630–31; *see also id.* at ——, 115 S.Ct. at 1640 (Kennedy, J., concurring) ("[N]either the actors nor their conduct have a commercial character, and neither the purposes nor the design of the statute have an evident

commercial nexus."). The Court's decision also relied on the absence of a jurisdictional element in the statute and the lack of relevant congressional findings.[1] *Id.* at ——-——, 115 S.Ct. at 1631–32.

■ Unlike the Gun–Free School Zones Act, the statutory scheme at issue here neither "plows thoroughly new ground" nor "represents a sharp break with the longstanding pattern" of federal regulation. *See Lopez,* —— U.S. at ——, 115 S.Ct. at 1632 (quoting *Lopez,* 2 F.3d at 1366). Rather, § 860 addresses a clearly commercial activity that has long been within federal power to regulate. In contrast to the firearm possession at issue in *Lopez,* drug trafficking is an "economic enterprise" that substantially affects interstate commerce in numerous clear ways. Each individual instance of cocaine dealing, for example, represents the end point of a manufacturing, shipping, and distribution network that is interstate—and international—in nature. In fact, Congress included specific findings to that effect when it passed the Controlled Substances Act. Controlled Substances Act, Pub L. No. 91–513 (84 Stat. 1236), tit. II, § 101, 1970 U.S.C.C.A.N. 1444, 1444–45 (codified at 21 U.S.C. § 801); *see also* Controlled Substances Penalties Amendments Act of 1984, Pub.L. No. 98–473, ch. V, sec. 503(a), § 405A, 1984 U.S.C.C.A.N. (98 Stat.) 2068, 2069 (amending Controlled Substances Act to include current § 860). For these reasons, this circuit upheld federal criminalization of intrastate drug dealing under the Commerce Clause before *Lopez, see United States v. Scales,* 464 F.2d 371, 375 (6th Cir.1972), as has every jurisdiction that has considered the issue after *Lopez, see United States v. Lerebours,* 87 F.3d 582, 584–85 (1st Cir.1996); *United States v. Staples,* 85 F.3d 461, 463 (9th Cir.1996); *United States v. Genao,* 79 F.3d 1333, 1336–37 (2d Cir.1996); *United States v. Brown,* 72 F.3d 96, 97 (8th Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2581, 135 L.Ed.2d 1095 (1996); *United States v. Wacker,* 72 F.3d 1453, 1475 (10th Cir.1995), *petition for cert. filed,* No. 95–9284 (U.S.

June 10, 1996); *Clark,* 67 F.3d at 1165–66; *United States v. Leshuk,* 65 F.3d 1105, 1111–12 (4th Cir.1995); *United States v. Lynch,* 908 F.Supp. 284, 291 (D.V.I.1995); *United States v. Grafton,* No. 1:95–CR–131–FMH, 1995 WL 506001, at *5 (N.D.Ga. Aug.15, 1995). *Lopez* does not give us cause to question Congress's power to regulate an activity as clearly commercial as drug trafficking.

Miller and McCoy point out that § 860 shares a characteristic with the statute that *Lopez* invalidated: in both cases, the regulated activity took place within one thousand feet of a school. The *Lopez* Court found such an association with education to be an insufficient nexus to bring the activity within the regulatory powers of Congress: "We do not doubt that Congress has authority under the Commerce Clause to regulate numerous commercial activities that substantially affect interstate commerce and also affect the educational process. That authority, though broad, does not include the authority to regulate each and every aspect of local schools." —— U.S. at ——, 115 S.Ct. at 1633.

■ As already discussed, however, congressional power in the instant case derives from the interstate nature of the *illegal drug trade,* not of the educational process. The problem in *Lopez* was that neither possessing a firearm nor being in a school zone was a basis for exercise of the federal commerce power. Here, in contrast, a key element of the crime—drug trafficking—clearly "substantially affects interstate commerce." Section 860 merely imposes an additional penalty for drug trafficking in a school zone. The statute therefore represents exactly what the *Lopez* Court hypothesized: a statute enacted under congressional "authority under the Commerce Clause to regulate numerous commercial activities that substantially affect interstate commerce and also affect the educational process." —— U.S. at ——, 115 S.Ct. at 1633. The fact that Congress chose in § 860 to heighten the punishment for drug dealers who operate near a school therefore

---

1. While *Lopez* was pending review in the Supreme Court, Congress amended § 922(q) to include such findings. *Lopez,* —— U.S. at —— n. 4, 115 S.Ct. at 1632 n. 4; Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, § 320904, 1994 U.S.C.C.A.N. (108 Stat.) 1796, 2125–26.

does not remove its basis for federal jurisdiction. *Clark,* 67 F.3d at 1165–66; *Salmiento,* 898 F.Supp. at 46–48; *Garcia–Salazar,* 891 F.Supp. at 571–72; *see also Lopez,* 2 F.3d at 1348 n. 10 (noting in dicta that law enhancing punishment for other offense derives its jurisdiction from underlying offense); *United States v. McDougherty,* 920 F.2d 569, 572 (9th Cir.1990) (upholding former version of § 860 under Commerce Clause before *Lopez* ), *cert. denied,* 499 U.S. 911, 111 S.Ct. 1119, 113 L.Ed.2d 227 (1991); *United States v. Thornton,* 901 F.2d 738, 741 (9th Cir.1990) (same); *cf. United States v. Bolton,* 68 F.3d 396, 399 n. 2 (10th Cir.1995) (basing rejection of *Lopez* challenge to federal statute criminalizing use of firearm during crime of violence on federal jurisdiction over underlying crime of violence), *cert. denied,* —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *Staples,* 85 F.3d at 462–63 (basing rejection of *Lopez* challenge to federal statute criminalizing use of firearm during drug trafficking offense on federal jurisdiction over underlying drug activity); *Brown,* 72 F.3d at 97 (same); *United States v. Milton,* Nos. CRIM. 95–00074, CRIM. 96–00020, 1996 WL 324401, at *2 (W.D.Va. May 30, 1996) (same); *Lynch,* 908 F.Supp. at 291–92 (same); *United States v. Walker,* 910 F.Supp. 837, 843–44 & n. 6 (N.D.N.Y.1995) (same); *Grafton,* 1995 WL 506001, at *5 (same).

■ Miller and McCoy also argue that the lack of a specific jurisdictional element in § 860 renders the statute unconstitutional. *See Lopez,* —— U.S. at ——, 115 S.Ct. at 1631 (noting that lack of jurisdictional element in statute militated against constitutionality). It is true that several of our post-*Lopez* cases have relied on the presence of such an element in rejecting Commerce Clause challenges to federal criminal statutes. *Chesney,* 86 F.3d at 568–70 (upholding 18 U.S.C. § 922(g)(1)); *United States v. Turner,* 77 F.3d 887, 889 (6th Cir.1996) (same); *United States v. Sherlin,* 67 F.3d 1208, 1213–14 (6th Cir.1995) (upholding 18 U.S.C. § 844(i)), *cert. denied,* —— U.S. ——, 116 S.Ct. 795, 133 L.Ed.2d 744 (1996). Nevertheless, the lack of a jurisdictional provision is not fatal to § 860's constitutionality. *Lopez* did not proclaim a general rule that all federal criminal statutes must include a jurisdictional element. Rather, it held that the presence of such an element is a means of "ensur[ing], through case-by-case inquiry," that the regulated activity falls within Congress's authority. —— U.S. at ——, 115 S.Ct. at 1631. In fact, the Court acknowledged its line of cases "upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce" and specifically mentioned *Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971), as an example of this jurisprudence, even though the criminal legislation upheld in *Perez* contained no jurisdictional provision. *Lopez,* —— U.S. at —— ——, 115 S.Ct. at 1630–31; *Perez,* 402 U.S. at 146–47, 91 S.Ct. at 1357–58 (upholding constitutionality of Title II of Consumer Credit Protection Act, Pub.L. No. 90–321 (82 Stat. 146), §§ 201–203, 1968 U.S.C.C.A.N. 176, 191–96 (codified at 18 U.S.C. §§ 891–896)). *Lopez* therefore does not require Congress to predicate regulation of an activity on a case-by-case jurisdictional finding where the activity, like drug trafficking, is of a kind that always implicates interstate commercial concerns.

■ In short, *Lopez* directs us to ensure that federal legislation like § 860 regulates an activity that substantially affects interstate commerce. We consider this mandate satisfied when a necessary element of the criminal offense involves an activity that falls within Congress's jurisdiction. In *Lopez,* the Court held that neither the firearm possession nor "school zone" elements of that crime implicated interstate commerce, and so the statute was unconstitutional. As in *Lopez,* the statute in the instant case has a "school zone" element, but it also requires involvement in drug trafficking, an activity that the federal government clearly may regulate. A necessary element of a § 860 offense therefore involves "activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce." *Lopez,* —— U.S. at ——, 115 S.Ct. at 1631. Section 860 accordingly passes constitutional muster.

## B. *Batson* Equal Protection

■ All three appellants claim that the prosecution violated equal protection principles by using its peremptory challenges to exclude two Latino jurors. On the defense's motion for mistrial, the district court found that (1) the appellants, who are African-American, could not maintain such a claim and (2) the prosecution provided adequate race-neutral explanations for its conduct. The district court's first ruling is in clear conflict with *Powers v. Ohio,* 499 U.S. 400, 402, 111 S.Ct. 1364, 1365, 113 L.Ed.2d 411 (1991), which held that a criminal defendant may assert jurors' equal protection rights by "object[ing] to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded jurors share the same race." We may nevertheless affirm the denial of the motion for mistrial if the district court's second, alternative finding is proper.

■ The procedural framework developed in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny governs equal protection claims of this kind. Under *Batson,* a defendant must first establish a prima facie case showing that the prosecution exercised peremptory strikes on the basis of race. If the defendant satisfies this requirement, the prosecution must articulate a race-neutral explanation for the challenges. The trial court must then decide if the defendant has carried the burden of proving purposeful discrimination. *Id.* at 96–98, 106 S.Ct. at 1723–24. Once the trial court has heard and ruled on a prosecutor's articulated reason, however, the issue of whether the defendant made a sufficient prima facie showing becomes moot. *Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991) (plurality opinion). Therefore, because the district court here issued its ruling after considering the prosecution's explanation, the question in the instant case boils down to whether the appellants established by a preponderance of the evidence that the preemptory strikes were intentionally discriminatory. *See Kelly v. Withrow,* 25 F.3d 363, 367 (6th Cir.) ("find[ing] no basis for disturbing the trial court's determination" on

*Batson* issue when trial court used preponderance of the evidence standard), *cert. denied,* —— U.S. ——, 115 S.Ct. 674, 130 L.Ed.2d 607 (1994). The district court's factual findings on this issue are reviewed for clear error. *United States v. Peete,* 919 F.2d 1168, 1179 (6th Cir.1990).

■ The prosecution gave two reasons for its decision to exclude juror Gonzalez: (1) she had been the victim of a rapist whom the government had failed to prosecute successfully and (2) she had an uncle who was in jail on marijuana charges. The defense offered no rebuttal. The prosecution's explanation is inherently believable, and, given the defense's failure to dispute it, the district court's ruling is not clear error.

■ The reasoning that the prosecution offered regarding juror Marquez is less convincing: it alleged that Marquez seemed too unintelligent and disinterested and that her presence as a juror might be a hardship to her. Nevertheless, the district court's conclusion regarding Marquez was not clearly erroneous either, for several reasons. First, the defense introduced no evidence or argument in opposition to the explanation, even when invited to do so. The defense might have demonstrated that the articulated reasons were in fact a pretext by showing, for example, that the prosecution had not challenged equally unintelligent or disinterested jurors of other races.

■ Second, the prosecution apparently waived a number of peremptory challenges, leaving open the possibility that an African-American might be on the jury. This militates against a finding that discrimination motivated the strikes. *United States v. Sangineto-Miranda,* 859 F.2d 1501, 1522 (6th Cir.1988). Third, the explanation is not inherently suspect. *See Hernandez,* 500 U.S. at 360, 111 S.Ct. at 1866 (plurality opinion) ("Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."). It is not a particularly thorough or deep justification, but neither is it arbitrary or irrational. After all, the challenge is supposed to be peremptory; the prosecution does not have to articulate a rationale that would support a

"for cause" challenge. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. The prosecution's relatively light burden in this regard, coupled with the defense's failure to rebut the explanation, indicates that denying the motion for mistrial was not reversible error.

### C. Sixth Amendment Ineffectiveness of Counsel

 Miller argues for the first time on appeal that he was denied effective assistance of counsel during his sentencing proceedings, in violation of the Sixth Amendment. He specifically challenges his attorney's failure to (1) challenge the government's position regarding the quantity of cocaine relevant to Miller's sentence, (2) seek a reduction of Miller's offense level based on acceptance of responsibility, and (3) seek a reduction of Miller's offense level based on his minor role in the offense.

As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations. The customary procedure followed in this situation by the various circuits is to permit the defendant to raise his ineffectiveness of counsel claim in a proper post-conviction proceeding under 28 U.S.C. § 2255. When, however, the record is adequate to assess the merits of the defendant's allegations, some courts will consider them.

*United States v. Wunder,* 919 F.2d 34, 37 (6th Cir.1990) (citation omitted). The threshold inquiry, therefore, is whether the record before this court provides an adequate basis for resolution of Miller's claims.

 It does not. To prevail on an ineffective assistance of counsel claim, one must show that one was prejudiced by counsel's inadequate performance. *United States v. Fry,* 831 F.2d 664, 669 (6th Cir.1987). Even if we assume that Miller's attorney was inadequate, we cannot determine from the evidence in the record whether Miller suffered any prejudice. A fully developed record might in fact show that Miller (1) was responsible for the quantity of drugs for which he was sentenced, (2) did not accept responsibility for his criminal conduct, and (3) did not play a minor role in the conspiracy. In other words, we cannot decide, based on the current record, whether the result of the sentencing proceeding would have been different if Miller's counsel had raised the issues Miller identifies here. We therefore leave the Sixth Amendment claim for collateral proceedings.

### III. Non–Constitutional Issues

The appellants also raise two non-constitutional claims. First, Miller and McCoy argue that the recent Supreme Court case of *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), mandates reversal of their convictions under 18 U.S.C. § 924(c). Second, all three appellants argue that the district court erred in calculating the amount of drugs for which each was accountable at sentencing.

### A. Impact of *Bailey*

 Miller and McCoy devote much of their brief to an attempt to persuade the court to reverse their convictions under 18 U.S.C. § 924(c), which provides additional punishment for those who use or carry a firearm during the commission of a drug trafficking offense. The government, however, has confessed error on the § 924(c) convictions in light of *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), a case that narrowed the previously broad range of conduct to which § 924(c) had been applied. Given that Miller's and McCoy's convictions seem to have been premised on activity that, after *Bailey,* no longer necessarily constitutes "using" or "carrying" firearms, we agree that they may not stand. *See United States v. Moore,* 76 F.3d 111, 112–14 (6th Cir.1996).

The government asks, however, that the cases be remanded for resentencing, presumably on the grounds that Miller's and McCoy's sentences for the other convictions may now be enhanced for firearm possession. *See* United States Sentencing Commission, *Guidelines Manual* § 2D1.1(b)(1) (1994) [hereinafter U.S.S.G.]. We agree that reversal of the § 924(c) convictions means that the

government may now seek such enhancements. U.S.S.G. § 2K2.4 commentary, applic. note 2; *United States v. Clements,* 86 F.3d 599, 600–01 (6th Cir.1996) (reversing § 924(c) conviction due to *Bailey* and remanding for consideration of enhancement of other sentence under U.S.S.G. § 2D1.1(b)(1)). We therefore remand Miller's and McCoy's cases for resentencing.

### B. Quantity of Drugs Findings

■ All three defendants dispute the amount of drugs used to determine their base offense levels, arguing that "the trial court failed to make factual findings concerning the foreseeability, scope of criminal activity, duration of involvement, and the intent and ability to produce drug quantities for each separate defendant." Appellants' Br. at 33. During Miller's sentencing, the court questioned the base offense level recommended in the presentence investigation report (the "PSR"), although Miller had not objected to it. The prosecutor and probation officer explained that an out-of-court statement by Hampton had referred to a total of sixteen to twenty kilograms of crack having been distributed during the course of the conspiracy. The court accepted this amount as relevant to Miller's conduct and accordingly calculated a base offense level of thirty-eight. In the subsequent sentencings of Tucker and McCoy, the court used this same amount of crack to calculate the base offense levels. Only McCoy formally objected to the ruling.

Under the sentencing guidelines, the conduct relevant to sentencing includes "in the case of a jointly undertaken criminal activity ( ... whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The commentary to this provision explains that

> the scope of the criminal activity jointly undertaken by the defendant ... is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant. In order to determine the defendant's accountability for the conduct

of others under subsection (a)(1)(B), the court must first determine the scope of the criminal activity the particular defendant agreed to jointly undertake....

> ....

> A defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct....

*Id.* commentary, applic. note 2.

■ With regard to this sentencing provision, the Sixth Circuit has stated that, "because 'the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy,' a sentencing judge may not, without further findings, simply sentence a defendant according to the amount of narcotics involved in the conspiracy." *United States v. Okayfor,* 996 F.2d 116, 120–121 (6th Cir.) (quoting *United States v. Lanni,* 970 F.2d 1092, 1093 (2d Cir.1992) (quoting *United States v. Perrone,* 936 F.2d 1403, 1416 (2d Cir.1991))), *cert. denied,* 510 U.S. 886, 114 S.Ct. 238, 126 L.Ed.2d 192 (1993). Rather, "individualized findings regarding the scope of the conspiracy and the duration and nature of each defendant's participation in the scheme" are needed, *United States v. Meacham,* 27 F.3d 214, 217 (6th Cir.1994), and a preponderance of reliable evidence must establish both scope and foreseeability, *United States v. Critton,* 43 F.3d 1089, 1098–99 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 1987, 131 L.Ed.2d 873 (1995).

Under these standards, the inquiry in Miller's hearing was insufficient. The evidence on which the district court relied referred only to the total amount of crack involved in the conspiracy. The court made no finding whatsoever regarding Miller's individual participation in the conspiracy. The court "then indiscriminately imported its factual findings concerning the amount of narcotics for which [Miller] was responsible into [Tucker's] sentencing calculus." *Meacham,* 27 F.3d at 217. In other words, in Tucker's sentencing proceeding the court explicitly and exclusively relied on the decision it had made when

sentencing Miller, rather than making findings particular to Tucker's involvement.

 Because Miller and Tucker did not object to their sentences at any time, we review for plain error. *United States v. Williams*, 53 F.3d 769, 770 (6th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996); Fed.R.Crim.P. 52(b). The many cases in this circuit detailing a sentencing judge's obligation to make individualized findings regarding each conspirator's participation in a conspiracy compel the conclusion that the district court's error was plain. *See United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1777–78, 123 L.Ed.2d 508 (1993) ("At a minimum, the Court of Appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law."). Furthermore, the error affected Miller's and Tucker's "substantial rights," *see id.* at 734, 113 S.Ct. at 1777–78; a finding that they could each foresee less than 1.5 kilograms of crack would have resulted in a reduction of more than five years from each sentence. Such a wide disparity not only shows prejudice to Miller and Tucker, but also calls into question the fairness and integrity of the proceeding, *id.* at 736, 113 S.Ct. at 1777–78, and therefore warrants a remand for resentencing.

Perhaps prompted by McCoy's objection to the PSR's quantity recommendation, the district court engaged in a more thorough inquiry into quantity during McCoy's sentencing hearing than it had earlier during Miller's and Tucker's. The court, however, relied on an out-of-court statement by co-conspirator Hampton that is not included in the record presently before us. While the rules of evidence do not apply in sentencing procedures, the evidence used must nevertheless have "sufficient indicia of reliability." U.S.S.G. § 6A1.3(a). Here, as the sentencing judge himself pointed out, Hampton's out-of-court statement was not entirely consistent with his trial testimony, and the absence of the out-of-court statement in the record before us precludes proper evaluation of the statement's reliability. On remand, then, the district court should revisit this issue as well, ensuring an adequate record for appellate review of the evidence used to calculate McCoy's sentence.

For the foregoing reasons, we **REVERSE** Miller's and McCoy's convictions under 18 U.S.C. § 924(c), **AFFIRM** the appellants' other convictions, and **REMAND** for resentencing proceedings consistent with this opinion.