**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tyransee A. HARRIS, Defendant–
Appellant.**

No. 00–3474.

United States Court of Appeals,
Sixth Circuit.

July 26, 2001.

Before KEITH, BATCHELDER, MOORE, Circuit Judges.

## OPINION

PER CURIAM.

This appeal concerns the district court's determination that a prosecutor's exercise of peremptory challenges against African–American members of a jury venire was not racially motivated. For the following reasons, we AFFIRM.

## I. BACKGROUND

On August 6, 1997, a federal grand jury sitting in the Northern District of Ohio returned a two-count indictment against defendant-appellant Tyransee A. Harris. Count I charged Harris with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and Count II charged him with being a felon in possession of a weapon, in violation of 18 U.S.C. § 922(g)(1).

When selecting a jury, the prosecutor used two peremptory challenges to strike two African–Americans, seated as numbers 26 and 27, from the venire panel. Defense counsel objected to the strikes on the basis of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The prosecutor then proffered its facially neutral reasons for striking the venire persons. The prosecutor stated the following regarding venire person number 26:

> [S]he was not married, had no children, and I generally take people like that off the jury because they consent to being less compassionate about themselves in this particular case, about drugs and firearms on the street. When she answered questions, her attitude also

seemed to be such that she seemed not to care to be here and may not pay close attention, and it is for those reasons that we chose to strike that juror, but not because of race.

(J.A. at 116.) As to venire person number 27, the prosecutor stated that:

[H]e had no children, even though he did have a nephew involved with the Delaware police force, and we noted he has been an RTA driver and has had problems with RTA bus drivers and their run-ins with the law and background as an RTA bus driver, that he may not be the best candidate for a juror.

(J.A. at 116.) In response, defense counsel stated "Let the record show that there are five African–Americans on the panel of 38 as No. 25, and all those that were struck or excused were excused by the government." (J.A. at 116.) The court denied Harris's *Batson* challenge, stating:

All right. The court notes that the first African–American panel member was No. 25, and No. 25 is, in fact, seated on the jury as No. 12. The next two African–Americans struck by the government actually would have been alternates if they had not been struck as jurors. So under the circumstances, the court will deny the *Batson* challenge.

(J.A. at 116.)

The jury subsequently found Harris guilty of both counts of the indictment. On February 19, 1998, the district court sentenced Harris to concurrent terms of incarceration of 137 months on Count I, and 120 months on Count II.

Harris appealed his conviction and sentence to this Court, raising suppression, *Batson* and evidentiary issues. We affirmed the judgment in every respect except the *Batson* issue. *See United States v. Harris* ("*Harris I*"), 192 F.3d 580, 589 (6th Cir.1999). We noted that the pres-ence of one African–American on the jury does not preclude a *Batson* challenge. *See id.* at 587. We also noted that the status of a potential juror as alternate is irrelevant for *Batson* purposes. *See id.* at 587–88. We concluded that the district court's terse analysis of Harris's *Batson* challenge was insufficient, and remanded for a determination of whether the prosecutor's use of peremptory strikes was discriminatory. *See id.* at 588. A mandate was issued pursuant to our disposition of the case. (J.A. at 11.)

On remand, the district court issued an order requesting that counsel file briefs with the court with their recommendations as to how to proceed. Harris filed a motion for new trial together with a memorandum of law in support of his motion. Harris argued that the *Harris I* Court ordered the district court to perform an impossible task in making a *Batson* analysis two years after trial, and that a new trial was the only proper remedy. Alternatively, Harris contended that the record supported the conclusion that under the totality of circumstances the preponderance of the evidence demonstrated that the prosecutor struck the two venire persons because of their race.

The government filed a motion in opposition to Harris's motion for a new trial, and moved the district court to enter an order detailing its reasons for having denied Harris's *Batson* challenge. The government argued that the record supported a finding that no discriminatory intent was involved in the use of peremptory challenges, and that a new trial would be unwarranted under terms of the mandate and under principles of justice. The government argued that its proffered reasons for striking the two jurors, given at the time of the *Batson* challenge, were valid.

In an order filed April 5, 2000, the district court concluded that the government

did not engage in purposeful discrimination because the non-discriminatory reasons offered by the prosecutor were reasonable and credible. The district court also noted that the nondiscriminatory animus of the prosecutor was further bolstered by the fact that, had he exercised no peremptories, the African–American venire person who was seated as juror number 12 would not have been so seated. The district court denied Harris's motion for a new trial.

On April 6, 2000, Harris filed a timely notice of appeal from the order of the district court.

## II. DISCUSSION

"The government cannot use its peremptory challenges in a criminal case to exclude members of the venire from the jury solely on the basis of their race." *United States v. Hill*, 146 F.3d 337, 340 (6th Cir. 1998). In determining whether such a violation occurred, the framework is well-settled: To establish a violation of equal protection under *Batson*, the defendant must first make a prima facie showing that the prosecutor exercised peremptory challenges based on race. The burden of persuasion then shifts to the prosecution to articulate race-neutral reasons for the strikes. The prosecutor must convey a reason that is "clear and reasonably specific." *United States v. Gibbs*, 182 F.3d 408, 438–39 (6th Cir.1999) (citing *Batson*). The reason given, however, "need not be particularly persuasive, or even plausible, so long as it is neutral." *Harris I*, 192 F.3d 580, 586 (6th Cir.1999). Finally, the district court must determine whether the defendant has established purposeful discrimination. *See Batson*, 476 U.S. at 96–98, 106 S.Ct. 1712. At this step of the analysis, the district court has the responsibility to assess the prosecutor's credibility under all of the pertinent circumstances, and then to weigh the asserted justification against the strength of the defendant's

prima facie case under the totality of the circumstances. *See Hill*, 146 F.3d at 342.

Our mandate following *Harris I* required the district court to decide, by a preponderance of the evidence, whether the prosecutor purposefully discriminated in his exercise of peremptory strikes. "[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *See Hernandez v. New York*, 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (citing *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. 1712). We review the district court's final determination of Harris's *Batson* challenge for clear error. *United States v. Hill*, 146 F.3d 337, 341 (6th Cir.1998).

Harris argues that the district court clearly erred in concluding that he failed to establish purposeful discrimination. First, he argues that he was denied a meaningful opportunity to rebut the government's proffered reasons for striking the two venire persons. Second, he argues that, due to the passage of time, he cannot effectively rebut the government's neutral reasons for exercising its peremptory strikes against the two African–American venire persons. Third, Harris contends that, on the merits, he has demonstrated that the government's exercise of its peremptory strikes was discriminatory. Finally, he argues that the district court erred in construing the *Harris I* court's remand order as precluding an order for new trial.

### A. Opportunity for Rebuttal

First, Harris contends that he did not have a meaningful opportunity to rebut the government's facially neutral reasons for striking the two African–American venire persons. Harris argues that he is prejudiced by the fact that his current counsel was not present at the voir dire, and thus is unable to meaningfully respond to the prosecutor's proffered reasons for

striking the two African–American panel- ists.

■ The record indicates that Harris was indeed given a meaningful opportunity to respond to the government's reasons for exercising its peremptories. After the prosecutor's statements, defense counsel stated: "Let the record show that there are five African–Americans on the panel of 38 as No. 25, and all those that were struck or excused were excused by the government." (J.A. at 116.) The district court then made its decision. While Harris did not make very good use of his opportunity for rebuttal, he did have the opportunity and cannot complain now that it was insufficient. Moreover, it is the defendant's burden to rebut, to whatever extent possible, the prosecutor's reasons for exercising his or her peremptory strikes on the record at the time such reasons are proffered.

Harris got a second chance for rebuttal when we remanded, in *Harris I,* for a determination of whether the government's exercise of its peremptories was discriminatory. On remand, Harris put forward his rebuttal arguments which the district court considered but found insufficient to satisfy Harris's burden of proving discrimination. And once again, Harris has presented his rebuttal arguments for this Court to consider. Harris's contention that he has had no meaningful opportunity to rebut the government's facially neutral reasons for exercising its peremptory strikes is without merit.

### B. Passage of Time

■ Harris contends that the district court erred in denying his motion for retrial because "any credibility determination made over two years after the voir dire at issue is inherently suspect." Appellant's Br. at 15. Harris contends that, due to the passage of time, the proper remedy was a new trial.

■ While a trial court may have a more difficult time in considering a *Batson* challenge several years after trial, generally the remedy for insufficient *Batson* analysis in the district court is to remand for proper determination. *See, e.g., United States v. Hill,* 146 F.3d 337, 341 (6th Cir. 1998) (remanding for proper *Batson* analysis). In *Harris I* we remanded so that the district court could complete the third step of *Batson* analysis, *i.e.,* to determine whether Harris established purposeful discrimination. Had there been an indication that a proper determination could not be made, we would not have hesitated to remand for a new trial. There was not, however, any such indication. Harris was not entitled to a new trial, and therefore the district court did not err in denying his motion for such.

### C. Purposeful Discrimination

■ Harris contends that he has successfully rebutted the government's neutral reasons for striking the two African–American venire persons, and has thus carried his burden in establishing purposeful discrimination. He asserts several ground this contention, and each will be addressed in turn.

■ First, Harris argues that one of the facially neutral reasons proffered by the prosecutor for striking the venire persons, *i.e.,* because they were childless and unmarried, is questionable since two jurors were also childless and unmarried. However, the prosecutor asserted additional criteria for striking each of the two venire persons. As to number 26, the prosecutor stated that she "seemed not to care" to be in court. A venire person's passivity is a permissible race-neutral justification for the exercise of a peremptory. *See McCurdy v. Montgomery Cnty., Ohio,* 240 F.3d 512, 521 (6th Cir.2001). As to number 27, the prosecutor stated that he was a former

RTA driver, and as such might harbor ill-feelings toward law enforcement officers. The district court stated that it was crediting these assertions. While the prosecutor's reasons "need not be particularly persuasive, or even plausible," *Harris I*, 192 F.3d at 586, the district court expressly found that these reasons were valid and credible. Furthermore, at the time the prosecutor gave these reasons for striking the two jurors, defense counsel did not dispute the allegations.

█ Second, Harris argues that the prosecutor's claim that it did not strike any potential jurors due to their race, as well as the prosecutor's representation that he had appeared before the district court on a number of occasions, were insufficient to withstand a *Batson* challenge. Harris is correct that the government must do something more than simply state that he did not strike the venire persons due to their race. *See Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995); *United States v. Hill*, 146 F.3d 337, 341 (6th Cir.1998). However, it is clear that the government did indeed come forward with neutral reasons for striking the two venire persons. Regarding the prosecutor's representation that he had appeared before the district court previously, the district court did not mention this assertion in its opinion, and apparently did not base its decision on it. Because neither of these statements served as the basis for concluding that the government's exercise of peremptory strikes was not discriminatory, Harris's discussion of these factors is irrelevant.

Third, Harris suggests that the prosecutor's assertion that venire person number 26 "seemed not to care" to be in court was not supported by the record. Harris suggests that, based on the cold record, there is no evidence that number 26 was reluctant to serve as a juror. The problem with this assertion is that it comes two years

too late. During jury selection, the prosecutor stated it struck number 26 because her attitude seemed to indicate that she did not wish to serve on the jury and might not pay close attention. Harris did not refute these statements at that time, despite the opportunity to do so. Moreover, Harris's contention that the government failed to demonstrate that venire person number 26 displayed a disinterested attitude seems to be based on a misperception regarding the burdens on the respective parties. Harris has the burden of establishing purposeful discrimination by a preponderance of the evidence; the government "does not have to articulate a rationale that would support a 'for cause' challenge." *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir.1996)

Fourth, Harris suggests that the government failed to demonstrate how venire person number 27's former occupation as an RTA driver would have affected his fairness to serve as a juror. Again, Harris's argument is being raised too late, and misrepresents the parties' burdens of proof. During jury selection, Harris did not refute the prosecutor's assertion that it was striking number 27 due to his former occupation. Because Harris did not refute the proffered reason, we must deem that he concedes it as valid. Moreover, Harris again mistakenly argues that the prosecutor must articulate a rationale that would support a "for cause" challenge. *Tucker*, 90 F.3d at 1142.

### D. Scope of Remand Order

Finally, Harris contends that "the district court erred in determining that the *Harris I* Panel's remand order was so limited as to preclude the granting of his Motion for a New Trial." Appellant's Br. at 27. Harris suggests that construing the mandate as limited in this case "work[ed] a particular hardship on [Harris] and his counsel, in that counsel was not a part of the original voir dire at the trial." *Id.*

Harris suggests that because his new counsel did not have the benefit of assessing the venire person's demeanor, his ability to satisfy his burden of persuasion was "handcuffed." *Id.* at 28.

There is no indication that the district court interpreted the mandate as precluding a new trial if the court found that Harris had established purposeful discrimination by the government in exercising its peremptory strikes. Harris's contention that a new trial was warranted on the ground that he was represented by new counsel, who was not present during the voir dire, is simply without merit.

### III. CONCLUSION

For the foregoing reasons, the order of the Honorable Paul R. Matia of the United States District Court for the Northern District of Ohio is hereby AFFIRMED.