**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gerald DeVaughn HESTLE,**
**Defendant–Appellant.**

No. 02–2517.

United States Court of Appeals,
Sixth Circuit.

Aug. 9, 2004.

Mark C. Jones, Asst. U.S. Attorney, Flint, MI, for Plaintiff–Appellee.

Daniel G. Van Norman, Lapeer, MI, for Defendant–Appellant.

Before SILER, MOORE and BALDOCK, Circuit Judges.*

## OPINION

BALDOCK, Circuit Judge.

Defendant Gerald DeVaughn Hestle appeals his conviction following a jury trial for possession with intent to distribute fifty or more grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1).[1] We exercise jurisdiction pursuant to 28 U.S.C. § 1291. On appeal, Defendant raises two issues: (1) whether the district court clearly erred in finding that the prosecutor's use of two peremptory challenges against African–American veniremen did not constitute purposeful discrimination; and (2) whether the evidence was sufficient to sustain Defendant's conviction for possession with intent to distribute fifty or more grams of crack cocaine? We answer "no" and "yes" respectively, and affirm.

### I.

Law enforcement, including two ATF agents, seized 65.44 grams of crack cocaine from the home of Defendant's brother, Cedric Hestle, in Flint, Michigan. Five persons were present in the home when the raid occurred: Defendant, his brother Cedric, a female named Pamela Simmons, her infant grandchild, and an elderly male named Eddie Simmons. Defendant was alone in a first floor room adjoining the room where the larger quantity of crack cocaine was located. The room in which Defendant was located contained a small amount of crack cocaine, drug packaging materials, .22 caliber ammunition, and gun cleaning supplies. A digital scale was located elsewhere on the first floor. The agents seized these items and then, after Defendant waived his Miranda rights, listened as *Defendant admitted the crack cocaine in the house belonged to him.*

The case proceeded to trial. During voir dire, the Government exercised peremptory challenges against the only two African–Americans on the venire. The Government first challenged Lawrence Young. The prosecutor explained that he struck Young because—

Mr. Young was by far the youngest person of the male gender on the panel from a chronological standpoint. Secondly, it strikes me, he was very immature. Number three, I thought he took attire to a new level wearing his football jersey and things like that. I think that was another indication of how very much immature he was and for that set of reasons it struck me that he should be removed from the panel.

In overruling Defendant's objection, the court noted the prosecutor "outlined a number of factors which I think legitimately can be taken into account in the exercise of [his] discretion[ ]."

The Government then challenged Lee Rogers, a sixty-six year old retired school teacher. On his jury questionnaire, Rogers had answered "yes" to the question: "Do you have any mental or physical infir-

---

\* The Honorable Bobby R. Baldock. United States Court of Appeals for the Tenth Circuit, sitting by designation.

1. The jury acquitted Defendant on a second charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The district court sentenced Defendant to life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A)(iii) based upon Defendant's two prior felony drug convictions.

mities which would impair your capacity to serve as a juror?" During voir dire, Rogers expressed surprise that he had answered the question yes, responding: "I did?" Rogers acknowledged, however, he had a bad back and difficulty sitting for extended periods of time. In striking Rogers, the prosecutor explained:

He struck me-he does strike me as easily confused. That is my professional observation of the man as I've watched him during this voir dire process. Even as simple as not recalling that he had checked off the infirmity thing, which is an important question. The Court had to follow up with that to inquire what that was about. Yes, he came around and explained that, but it seems to me that is a pretty clear type of thing, which is whether or not he can sit there adequately or not. That's not a hard question. If he's having a hard time with that, he may have a hard time following all these witnesses testifying, all these exhibits floating around the courtroom, cross-examination, following jury instructions and things of that sort.

Upholding the second peremptory challenge, the court stated the prosecutor—

has outlined, in my estimation, the circumstances that would justify his exercising his challenge, however other than the race of the juror involved, it's too bad that there is now an all Caucasian jury. I think [the prosecutor is] within his rights in exercising his discretion when he used this challenge. The gentlemen—of course he did—on the questionnaire he said that he had a physical condition that would impair his service. And when he was questioned at sidebar, he said that he had a back problem; he was under treatment for that back problem. And when I asked him about sitting for long periods of time, he was somewhat—somewhat noncommittal

about that, until I told him that he probably wouldn't have to sit for more than two hours at a time. He said he thought he would be able to bear up under that situation. But I think that's a consideration. He did indicate that it's a serious enough problem that he checked on the questionnaire that this would impair his service. So I believe that the Government can exercise discretion that this would impair his service.

## II.

In *Batson v. Kentucky,* 476 U.S. 79, 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court established a three part test for determining whether a prosecutor's use of peremptory challenges to exclude members of a cognizable group violates the Equal Protection Clause. First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties submissions, the trial court must determine whether the defendant has shown purposeful discrimination. " 'The trial court's decision on the ultimate question of discriminatory intent [i.e., purposeful discrimination] represents a finding of fact of the sort accorded great deference on appeal.' We may reverse that finding of fact only where we find clear error." *United States v. Hill,* 146 F.3d 337, 341 (6th Cir.1998) (quoting *Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). As the Supreme Court recently explained:

[T]he critical question in determining whether a prisoner has proved purposeful discrimination at step three is the persuasiveness of the prosecutor's justification for his peremptory strike. At this stage, implausible or fantastic justi-

fications may (and probably will) be found to be pretexts for purposeful discrimination. In that instance the issue comes down to whether the trial court finds the prosecutor's race-neutral explanations to be credible. Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.

*Miller–El v. Cockrell*, 537 U.S. 322, 338–39, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (internal quotations and citation omitted).

■ In this case, Defendant, an African–American himself, established a prima facie case for race discrimination. The prosecutor countered with a facially-valid, *wholly neutral* explanation for his two peremptory challenges of veniremen Young and Rogers. Lastly, the district court accepted the prosecutor's explanations and found Defendant had not proven purposeful discrimination. On appeal, the only argument Defendant presents to establish clear error is that the prosecutor eliminated all the African–Americans in the venire and Defendant is a member of the excluded group. Thus, according to Defendant, the prosecutor's explanations for his strikes cannot be considered credible. The district court, however, found otherwise. Because we do not view the prosecutor's explanations as "implausible or fantastic," we cannot say the court's finding was clearly erroneous. "A peremptory challenge is not unconstitutional solely because it has a racially disproportionate impact. Some proof of racially discriminatory intent or purpose is required in order to show a violation of the Equal Protection Clause." *United States v. Jackson*, 347 F.3d 598, 605 (6th Cir.2003). In this case, Defendant has offered no such proof.

## III.

■ In addition to his *Batson* claim, Defendant asserts the Government's evidence was insufficient and failed to establish anything more than his mere presence in the house where the crack cocaine was present. The test for sufficiency of the evidence challenges is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). To establish a violation of 21 U.S.C. § 841(a)(1), the Government must prove (1) knowing (2) possession of a controlled substance (3) with intent to distribute. *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir.2001). Circumstantial evidence alone can be sufficient to sustain a conviction under § 841(a)(1). *Id.*

In this case, any rational trier of fact could have found Defendant guilty of violating § 841(a)(1). The two ATF agents testified Defendant at the time of the raid admitted he owned the crack cocaine discovered in his brother's home. Defendant's subsequent denial that he owned the cocaine based on his earlier desire to "take the rap" for his brother resulted in a credibility determination for the jury. The jury was free to accept Defendant's explanation for his prior admission but it declined to do so. That was the jury's prerogative. Defendant's admission together with the evidence seized from the home, i.e. (1) a significant quantity of crack cocaine, (2) drug weighing and packaging materials, and (3) firearm ammunition, were sufficient to establish the elements necessary to sustain Defendant's conviction under § 841(a)(1).

AFFIRMED.

MOORE, Circuit Judge, concurring.

Although I agree that Hestle failed to meet his burden in challenging the prosecution's peremptory strikes of African–Americans from the jury, I write separately because of my concern surrounding the use of the challenges in light of the facts of the situation.

In order to demonstrate an equal protection violation on the basis of a racially motivated peremptory strike, Hestle had to establish a prima facie case that the prosecution exercised the peremptory strikes on the basis of race. *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996). After a prima facie showing, the burden shifted to the government to "articulate a race-neutral explanation for the challenges." *Id.* The trial court was then left to determine if Hestle had successfully proved "purposeful discrimination." *Id.* Because the district court made its ruling after weighing the prosecution's proffered explanation for the peremptory strikes, "the question ... boil[ed] down to whether [Hestle] established by a preponderance of the evidence that the peremptory strikes were intentionally discriminatory." *Id.* This, Hestle did not do.

Hestle's counsel failed to make the necessary showing by neglecting to present evidence of intentional discrimination or to challenge the government more thoroughly on its asserted reason for its peremptory challenge of Lawrence Young. While Young was struck for his alleged immaturity, another member of the jury pool, whose first name was Morgan, was the same age as Young, twenty-one, yet the government made no comparison between the maturity of Young and Morgan.[1] Furthermore, Hestle's counsel appears to have failed to notice Morgan's existence, as no query was posed to the prosecution as to

why Young was "immature" yet Morgan was not. I am only left to wonder what it was that so concerned the prosecution about Young's level of maturity, while no similar concern was expressed regarding Morgan.

This was not the only time Hestle's counsel failed to contest effectively the prosecution's asserted reasons for a peremptory challenge, as he made the same mistake with regard to the prosecution's peremptory challenge of Leo Rodgers. There, the prosecution provided various reasons for the challenge, yet again, Hestle's counsel failed to pursue them in any detail, or in any significant way to rebut the prosecution's asserted justifications. As a result, the prosecution successfully struck the only two African–American members of the jury pool.

In any event, because Hestle failed to demonstrate intentional discrimination, as was his burden, his claims must fail, for as the majority notes, peremptory challenges that have a racially disproportionate impact are not unconstitutional unless "[p]roof of racially discriminatory intent or purpose" is shown. *Hernandez v. New York*, 500 U.S. 352, 359–60, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (quoting *Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).

In sum, "[t]he burden was on [Hestle] as the party challenging the strike to prove the existence of purposeful discrimination, and when faced with the government's seemingly race-neutral explanation, [Hestle] made no response." *United States v. Jackson*, 347 F.3d 598, 606 (6th Cir.2003). In fact, after listening to the prosecution's articulated facially race-neutral explanation for challenging Young, the district

---

1. It is unclear from the Joint Appendix what the sex of this potential juror was. The only

information provided in the record was that Morgan was an unmarried college senior.

court asked Hestle's counsel if he had any comment. Hestle's counsel simply said, "No. Thank you." J.A. at 198. This demonstrates Hestle's counsel's utter failure in contesting the reasons asserted by the prosecution in even the slightest of ways. This is not enough to demonstrate intentional discrimination. Accordingly, because of the failure to develop the record, the claim of racially motivated use of peremptory challenges must fail.

