103 F.3d 129
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Larry EALY, Plaintiffs-Appellants
v.
CITY OF DAYTON, et al., Defendants-Appellees.
 No. 95-3969.
 United States Court of Appeals, Sixth Circuit.
 Dec. 16, 1996.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges; and EDGAR, District Judge.*
 KENNEDY, Circuit Judge.
 
 
 1
 Plaintiff Larry Ealy, pro se, appeals the District Court's order denying his motion for judgment as a matter of law or a new trial. In this action brought under 42 U.S.C. § 1983, the court instructed the jury that defendant had used excessive force to arrest plaintiff and had thereby violated plaintiff's constitutional rights. However, the jury found that defendant had not proximately caused plaintiff's injuries and, therefore, rendered a verdict against him, awarding no damages. Plaintiff contends that (1) there was no legally sufficient basis for the jury to find against him because the court had instructed the jury that defendant had used excessive force; (2) there was no legally sufficient basis for the jury to deny damages to plaintiff when it was established that defendant used excessive force; (3) the jury instructions were defective; (4) the damages were inadequate; (5) the verdict was against the weight of the evidence; (6) there was trial error; (7) the proceedings were irregular; and (8) misconduct of counsel occurred. For the following reasons, we AFFIRM.
 
 I. Facts
 
 2
 This case arises from an altercation which occurred on March 14, 1990, involving plaintiff, defendant Richard Scott Davis, and former defendants Michael Siekierka, Andrew A. Booher, Steven G. Abney, and Robert S. Phillips. Defendant and all of the former defendants were employed at the time as police officers by the City of Dayton (City), also a former defendant. The cause of the altercation was much disputed. Plaintiff alleged that he was standing peacefully in the Dayton Montgomery Municipal Court Building when the defendant officers unlawfully and maliciously struck and beat him. The officers claimed that plaintiff had unreasonably started the fight.
 
 
 3
 Plaintiff brought an action under 42 U.S.C. § 1983, initially alleging that all of the named officers assaulted him, unlawfully arrested him, and maliciously filed baseless charges against him in violation of state and federal law. He also asserted that the City was liable for constitutional violations committed by the officers, because it permitted a pattern and practice of unjustified and unreasonable force and had failed to discipline the officers. He claimed that as a result of defendants' actions, he had suffered physical injury and pain, loss of reputation, emotional distress, loss of enjoyment of life and had incurred medical and legal expenses. Plaintiff sought $600,000 in compensatory damages and $1,000,000 in punitive damages.[1]
 
 
 4
 On March 14, 1990, defendant Davis was convicted by a state court jury of assault for his use of force against plaintiff. Plaintiff subsequently filed a motion for partial summary judgment with regard to his claim against defendant, arguing that defendant was collaterally estopped from litigating the excessive force issue in the § 1983 action. The District Court held that because the conviction necessarily required the state court jury to find that defendant had used excessive force in arresting plaintiff, see State v. Yingling, 44 N.E.2d 361 (Ohio Ct.App.1942), the question of whether defendant had used excessive force upon and assaulted plaintiff had already been litigated in the state court proceeding. Thus, the court concluded that defendant was collaterally estopped from denying that he had assaulted plaintiff and violated plaintiff's Fourth Amendment right to be free from unreasonable seizure, and it accordingly granted plaintiff's motion for partial summary judgment on this ground.
 
 
 5
 In the same order granting partial summary judgment to plaintiff, the District Court also granted the defendants' motion that the claims against the City be tried separately from the claims against the individual defendants. Subsequently, and prior to trial, plaintiff dismissed with prejudice his claims against all of the defendant officers except Davis. Thus, on March 1, 1994, the trial began against defendant only on plaintiff's federal claim under § 1983 alleging excessive use of force in violation of the Fourth Amendment, and on his state law claims for assault and malicious prosecution.
 
 
 6
 After plaintiff rested his case, the court entered judgment as a matter of law on the malicious prosecution claim in favor of defendant. Thus, only the claim of excessive force and assault proceeded to the jury. The District Court instructed the jury that defendant had used excessive force in violation of the Constitution and under color of state law, but it instructed that the jury would have to determine whether the use of excessive force was the proximate cause of the damages that plaintiff claimed he had suffered. Similarly, the court instructed the jury that defendant had assaulted plaintiff, but that it would have to determine whether the assault was the proximate cause of the damages that plaintiff claimed he had suffered. Furthermore, the court instructed the jury that plaintiff claimed damages for physical pain and suffering, psychological injuries, anxiety, mental trauma, emotional distress and humiliation, ability to perform usual activities, and permanent injuries from which he would continue to suffer in the future. Thus, the jury was essentially left to determine two main issues: (1) whether defendant's assault and/or use of excessive force was the proximate cause of plaintiff's claimed injuries and (2) if so, what amount of damages, compensatory and punitive, should be awarded.
 
 
 7
 The jury returned a verdict for defendant. The responses to the interrogatories which had been given to the jury showed that the jury found that plaintiff had not proven by a preponderance of the evidence that the excessive force or assault was the proximate cause of the damages plaintiff claimed he had suffered. Because proximate cause was an essential element of liability on both claims, the jury did not consider the question of damages. The District Court accordingly entered a non-final judgment in favor of defendant on both claims on March 15, 1995.
 
 
 8
 On March 27, 1995, the District Court denied plaintiff's motion for judgment as a matter of law pursuant to FED.R.CIV.P. 50(b) or, in the alternative, for a new trial pursuant to FED.R.CIV.P. 59(a). The plaintiff filed a notice of appeal on May 17, 1995 which was dismissed by this Court for lack of jurisdiction. On August 3, 1995, the District Court granted plaintiff's motion to dismiss his claim against the City without prejudice. This appeal followed.
 
 II. Discussion
 A. Standards of Review
 
 9
 We review de novo a district court's application of FED.R.CIV.P. 50, which governs motions for judgment as a matter of law. K & T Enters., Inc. v. Zurich Ins. Co., 97 F.3d 171 (6th Cir.1996). However, we review differently Rule 50(b) motions based on a challenge to the facts as found by the jury and those based on purely legal grounds. Id. This Court's standard of review for a Rule 50(b) motion based on the sufficiency of the evidence is identical to that used by the District Court. Id. We do not weigh the evidence, evaluate the credibility of the witnesses, or substitute our judgment for that of the jury. Wehr v. Ryan's Family Steak Houses, Inc., 49 F.3d 1150, 1152 (6th Cir.1995). Instead, we must view the evidence in the light most favorable to the party against whom the motion was made, and give that party the benefit of all reasonable inferences. Id. We reverse a district court's denial of such a motion only if reasonable minds could not come to a conclusion other than one in favor of the movant. Id. With regard to legal questions, we review the District Court's denial of a Rule 50(b) motion de novo. K & T Enters. Inc., 97 F.3d at 176.
 
 
 10
 A trial court should deny a motion for a new trial " 'if the verdict is one that reasonably could be reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact.' " Powers v. Bayliner Marine Corp., 83 F.3d 789, 796 (6th Cir.1996), cert. denied, --- S.Ct. ---- (1996). We will reverse a district court's denial of a motion for a new trial only on a showing of abuse of discretion. Id. "Abuse of Discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." Monette v. AM-7-7 Baking Co., 929 F.2d 276, 280 (6th Cir.1991). Unlike a motion for judgment as a matter of law, however, the court should weigh the evidence when a party challenges the jury's verdict as clearly against the weight of the evidence. J.C. Wyckoff & Assoc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1487 (6th Cir.1991). Thus, a new trial may be properly granted even though judgment as a matter of law was inappropriate, because although the evidence may support the verdict, the contrary evidence may be so strong that the verdict was against the manifest weight of the evidence. See Porter v. Lima Mem'l Hosp., 995 F.2d 629, 635 (6th Cir.1993).
 
 B. Judgment as a Matter of Law
 
 11
 Plaintiff argues that he is entitled to judgment as a matter of law because the court determined, and the jury was so instructed, that defendant had used excessive force in violation of plaintiff's rights under the Fourth Amendment. Plaintiff appears to have two arguments in this regard. First, he asserts that he is entitled to damages as a matter of law because it was established that defendant used excessive force. Second, he maintains that no reasonable juror could find that he was not entitled to damages. We find that neither ground supports a finding that plaintiff is entitled to judgment as a matter of law.
 
 1. Legal Arguments
 
 12
 Plaintiff's first argument is that, as a matter of law, he was entitled to compensatory damages. A violation of a constitutional right does not necessarily establish that a plaintiff is entitled to recover damages under § 1983. " 'The basic purpose' of § 1983 is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.' " Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) (second emphasis added) (quoting Carey v. Piphus, 435 U.S. 247, 254 (1978) (holding that student could recover compensatory damages only if he proved actual injury caused by the denial of his constitutional rights)). Thus, we have explained that "[p]roximate causation is an essential element of a § 1983 claim for damages." Horn v. Madison County Fiscal Court, 22 F.3d 653, 659 (6th Cir.), cert. denied, 115 S.Ct. 199 (1994). "[A] violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." Id.
 
 
 13
 Although the grant of partial summary judgment for plaintiff established that defendant had used excessive force in violation of plaintiff's constitutional rights, it did not establish that defendant's actions had caused any of the injuries that plaintiff claimed he had suffered. Therefore, the District Court properly instructed the jury that the plaintiff still had to prove by a preponderance of the evidence that defendant's use of excessive force proximately caused damages. The jury's responses to the interrogatories demonstrate that plaintiff failed to establish this element and, consequently, the jury did not award any damages. As a matter of law, plaintiff's failure to establish the causation element renders a verdict against him correct.
 
 
 14
 Furthermore, no compensatory damages can be awarded for a violation of a right absent proof of actual injury, i.e. injury caused by the violation. Stachura, 477 U.S. at 308; Carey, 435 U.S. at 264; Pembaur v. City of Cincinnati, 882 F.2d 1101, 1104 (6th Cir.1989) ("The purpose of compensatory damages is to compensate the injured party for the costs of the injury; thus, in the absence of an injury, compensatory damages are inappropriate."). "[T]he abstract value of a constitutional right may not form the basis for § 1983 damages." Stachura, 477 U.S. at 308 (citing Carey, 435 U.S. 247). Such an award would in fact be "noncompensatory." See id. at 308-09. Therefore, plaintiff was not entitled to compensatory damages simply because his Fourth Amendment rights had been violated.
 
 
 15
 We realize that "excessive force" and "no damages" presents an intuitively peculiar combination. We agree with the Second Circuit, however, that a finding of excessive force does not, as a matter of law, entitle the victim to an award of compensatory damages. See Haywood v. Koehler, 78 F.3d 101, 104 (2d Cir.1996); accord Briggs v. Marshall, 93 F.3d 355, 359-60 (7th Cir.1996). There are a number of situations where a jury may reasonably conclude that compensatory damages are inappropriate in spite of finding that excessive force was used. For example, in Gibeau v. Nellis, 18 F.3d 107 (2d Cir.1994), the Second Circuit recognized that, in the course of an altercation between an inmate and one or more prison officials, both justifiable force and excessive force might have been used, but that an injury, either emotional or physical, might have resulted from the justifiable force, thereby supporting the denial of compensatory damages. Additionally, a jury may reasonably conclude that evidence regarding the plaintiff's injuries was not credible. See Butler v. Dowd, 979 F.2d 661, 669 (8th Cir.1992) (en banc), cert. denied, 508 U.S. 930 (1993). Finally, a jury may reasonably conclude that although the use of force was unnecessary, it did not cause any physical injuries. See Gibeau, 18 F.3d at 110. Of course, if it is clear from the undisputed evidence that a plaintiff's injuries were caused by a defendant's excessive use of force, then the jury's failure to award some compensatory damages should be set aside and a new trial ordered, see Haywood, 78 F.3d at 104, but such a determination is not a question of law but rather one of fact.
 
 
 16
 Along these same lines, we suspect that plaintiff also means to argue that he is entitled to "presumed damages." He understandably appears to believe that since it was established that defendant used excessive force, how could anyone find that he had not been injured. Presumed damages are an appropriate substitute for ordinary compensatory damages in cases where the "plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish." Stachura, 477 U.S. at 310-11 (emphasis added); see also Walje v. City of Winchester, 827 F.2d 10, 12 (6th Cir.1987). A plaintiff must still prove an actual compensatory injury, see Stachura, 477 U.S. at 311; Baumgardner v. Secretary, United States Dep't of Housing and Urban Dev., 960 F.2d 572, 583 (6th Cir.1992), and damages should not be presumed to flow from every deprivation of a constitutional right, see Carey, 435 U.S. at 263. Plaintiff wishes that we assume that he was injured by defendant's unconstitutional actions and that his injuries are merely difficult to establish. However, presumed damages are inappropriate where, as here, the jury found it unlikely that injury occurred.
 
 
 17
 At the very least, plaintiff argued to the District Court, he is entitled to nominal damages. The Supreme Court has held that nominal damages "are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury." Stachura, 477 U.S. 308 n. 11. Thus, in Carey, the Court approved an award of nominal damages not to exceed one dollar for a deprivation of due process where no actual injury was proven. Carey, 435 U.S. 266. However, plaintiff never argued the question of nominal damages to the District Court or to the jury during the trial, and he never requested an instruction on nominal damages. Indeed, he never mentioned nominal damages during the conference held by the court to discuss the jury instructions.
 
 
 18
 FED.R.CIV.P. 51 provides in pertinent part that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Failure to comply with Rule 51 results in a waiver of the objection advanced on appeal, and the jury verdict can be reversed only for plain error. See Preferred Rx, Inc. v. American Prescription Plan, Inc., 46 F.3d 535, 548 (6th Cir.1995). We have explained that the courts have recognized a narrow exception to the general prohibition of Rule 51 " 'where the error was obvious and prejudicial, and required action by the reviewing court in the interest of justice.' " Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir.1987) (quoting Batesole v. Stratford, 505 F.2d 804, 808 (6th Cir.1974) (internal quotation marks omitted)).
 
 
 19
 Here, the lack of an instruction regarding nominal damages, in the absence of a request by the plaintiff for such an instruction, did not constitute plain error. Although the Supreme Court has said that the violation of a constitutional right should be "actionable" for nominal damages without proof of actual damages, Carey, 435 U.S. at 266, it has not said that a plaintiff is entitled to such damages, see Franklin v. Aycock, 795 F.2d 1253, 1265 (6th Cir.1986) ("[Plaintiff] specifically requested nominal damages and the Supreme Court has declared that at least nominal damages will be awarded, if sought, for a denial of procedural due process." (emphasis added)).[2] The court here was not required to include such an instruction where plaintiff had not requested nominal damages, perhaps for strategic reasons, see Briggs, 93 F.3d at 359-60 (discussing plaintiff's argument that nominal damages instruction is inappropriate as a matter of law where excessive force has been proven).
 
 
 20
 In sum, in finding that the defendant's actions did not cause plaintiff's injuries, the jury essentially found that plaintiff had suffered no actual compensable injuries. As a matter of law, plaintiff was not entitled to damages in spite of the established violation of a constitutional right.
 
 2. Sufficiency of the Evidence
 
 21
 Plaintiff next argues that the evidence established that his injuries resulted from defendant's use of excessive force. We note initially that questions of proximate cause are questions of fact which are properly left to the jury if reasonable persons could reach different conclusions. See George v. City of Long Beach, 973 F.2d 706, 709 (9th Cir.1992), cert. denied, 507 U.S. 915 (1993). The facts in this case were much in dispute. Evidence was presented that the officers used some justifiable force and that plaintiff unreasonably put up a fight and that the justifiable force was the true proximate cause of some of his injuries. The jury then had to decide what injuries were caused by defendant's use of excessive force. Drawing all reasonable inferences in defendant's favor, we conclude that a reasonable jury could have found that plaintiff had failed to establish that his injuries were caused by defendant's use of excessive force.
 
 
 22
 Plaintiff presented evidence of injuries to his ankle, right elbow, and emotional and psychological well-being. Viewing the evidence in the light most favorable to defendant, the jury could have found that none of these injuries were proximately caused by defendant. Evidence suggested that during the entire incident, defendant was holding plaintiff's head and neck and did not come in contact with his ankle, legs, or arms. In terms of the psychological damage, plaintiff's own expert witnesses testified that plaintiff's emotional problems pre-existed the incident. The jury could have thus found that defendant's use of excessive force was not the proximate cause of these injuries. Cf. Butler, 979 F.2d at 669 ("The jury could have awarded nominal damages because it concluded that the plaintiff's actions, not those of the defendant, were the cause in fact of most of plaintiff's injuries.").
 
 
 23
 The harder issue was the evidence regarding injuries to the head. As noted, the evidence showed that defendant was the only person near plaintiff's head during the incident. Moreover, there was uncontroverted evidence that plaintiff suffered damages to his head, specifically his tongue and the left side of his head. However, as in Haywood, 78 F.3d at 104, "[w]hat was undisputed was the injury to [plaintiff's] head.... The cause of this injury was very much in dispute." Here, the jury could have found that plaintiff suffered his injuries, including the cut on his head, when he was first "taken down" by the group of officers at the beginning of the altercation. Furthermore, there was evidence that plaintiff repeatedly tried to "head butt" defendant. Thus, there was evidence from which the jury could have concluded that defendant's unconstitutional actions around plaintiff's head were not the proximate cause of the injuries. As the District Court explained:
 
 
 24
 Giving full credence to [defendant's] version of events, the jury could have found that [defendant] did not act improperly (i.e. was only reacting to [plaintiff's] unreasonable actions in starting and continuing the fight) until the final time that he "pushed" [plaintiff's] head to the ground, and that said "push" resulted in no significant damage to [plaintiff].
 
 
 25
 Moreover, there was evidence that plaintiff suffered injury to the right side of his head, but there was evidence that the final push of plaintiff's head to the ground involved the left side of his head. Thus, the jury could have concluded that the final push was unnecessary but not of sufficient force to cause any compensable injury to plaintiff. See Gibeau, 18 F.3d at 110. In sum, construing the evidence in light most favorable to defendant, the jury could have found that plaintiff had failed to prove by a preponderance of the evidence that any compensable, i.e. actual, injury was caused by defendant's use of excessive force.
 
 C. New Trial
 
 26
 Plaintiff also contends that the trial outcome resulted in a miscarriage of justice based on trial error, irregularity in proceedings, misconduct of counsel, defective jury instructions, inadequate damages, and a resulting verdict against the weight of the evidence.[3] Finding no merit in any of these claims, we affirm the District Court's denial of a new trial.
 
 1. Weight of the Evidence
 
 27
 With regard to most of the injuries claimed, the evidence of causation did not weigh in favor of plaintiff. Because there was a great deal of evidence that defendant's actions were limited to plaintiff's neck and head area, the evidence did not weigh in favor of a finding that defendant caused the claimed damage to plaintiff's elbow and ankle. Furthermore, the evidence did not clearly weigh in favor of a finding that defendant's use of excessive force had caused plaintiff's claimed psychological damages. From the evidence presented, the jury could have concluded that plaintiff's psychological injuries pre-existed the incident or it could have found that any injury caused was not attributable to defendant's actions but rather attributable to the actions of the other officers.
 
 
 28
 The claimed damages to plaintiff's head present a closer question. Nevertheless, it would not be against the clear weight of the evidence for the jury to find that the majority of the injuries to plaintiff's head were caused by (1) the actions of the other officers when, for example, they "brought him down" at the beginning of the altercation or (2) plaintiff himself by unreasonably resisting what several witnesses testified began as a reasonable use of force.
 
 
 29
 The strongest evidence for plaintiff involves the final time that defendant slammed plaintiff's head to the ground. The clear weight of the evidence indicates that defendant took this action and that this action constituted excessive force. However, the evidence does not clearly indicate what damages resulted from that final head slam. For example, evidence was presented that plaintiff suffered injury to the right side of his head but that the final push entailed defendant slamming the left side of plaintiff's head into the floor. Thus, it cannot be said that the clear weight of the evidence indicates that all or even some of plaintiff's head injuries were caused by defendant's use of excessive force.
 
 
 30
 2. Trial Error and Irregularity in Proceedings
 
 
 31
 Although plaintiff has not asserted the specific claims which constitute "trial error and irregular proceedings," he has asserted a couple of claims which we believe fall into this category. First, plaintiff asserts that the "city attorneys did everything they could to eliminate an all black jury." We construe this as a challenge under the Fourteenth Amendment to defendant's use of peremptory challenges to exclude two out of three African-American potential jurors.
 
 
 32
 Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny hold that the use of peremptory challenges to exclude a venire-person solely on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment. Such discrimination is prohibited in both criminal and civil contexts. See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 616 (1991). Under Batson, the party disputing a peremptory challenge must first establish a prima facie case showing that the party exercised a peremptory strike on the basis of race. See U.S. v. Tucker, 90 F.3d 1135, 1142 (6th Cir.1996). If the party satisfies this requirement, the party exercising the peremptory challenge must articulate a race-neutral explanation for the strike. Id. The trial court must then decide whether the party disputing the peremptory strike has carried the burden of proving purposeful discrimination. Id. However, once the trial court has heard and ruled on the articulated race-neutral reason, the issue of whether the party challenging the strike has made a prima facie showing becomes moot. Id. "Therefore, because the district court here issued its ruling after considering [defendant's] explanation, the question in the instant case boils down to whether the [plaintiff] established by a preponderance of the evidence that the peremptory strikes were intentionally discriminatory." Id. The District Court's factual findings on this issue are reviewed for clear error. Id.
 
 
 33
 Defendant asserted that he excused potential juror Curtis because he had been treated by Dr. Taylor, one of plaintiff's witnesses, on a couple of occasions. Defendant was concerned that this potential juror would favor Dr. Taylor's testimony. Defendant excluded potential juror Jones because she had indicated on the written jury questionnaire that she was a member of a police organization, but then during voir dire she did not respond affirmatively to the judge's question about whether anybody had ever served in a law enforcement organization.
 
 
 34
 Plaintiff agreed that "on the surface" the decision to exclude Curtis was legitimate because he had had contact with a witness. He offered no evidence that "below the surface" this exclusion was based on intentional discrimination. With regard to Jones, plaintiff suggested that if defendant was truly concerned about the discrepancy, he should have asked her about it during voir dire. Again, however, plaintiff offered no evidence demonstrating that the exclusion was based on intentional discrimination. The District Court found that defendant had articulated legitimate reasons for excluding Curtis and Jones and thus overruled plaintiff's Batson challenge. We cannot say that the District Court clearly erred in making this ruling.
 
 
 35
 Plaintiff's argument that the entire trial proceeding was racially discriminatory apparently is intended to include not only the Batson challenge but also the testimony of Clydette North. Before the District Court, plaintiff specifically argued that North's testimony was inadmissible character evidence and extremely prejudicial. We review a district court's evidentiary rulings for an abuse of discretion. Hancock v. Dodson, 958 F.2d 1367, 1371 (6th Cir.1992).
 
 
 36
 We need not determine whether North's testimony was inadmissible because even if the evidence could have incited prejudice, we find that such prejudice was cured by the court's limiting instruction to the jury. Although prejudice that affects the fairness of a proceeding can be grounds for a new trial, a court should deny a new trial when such prejudice is cured by instructions of the court. Holmes v. City of Massillon, Ohio, 78 F.3d 1041, 1046-47 (6th Cir.1996), cert. denied, --- S.Ct. ---- (1996). "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions ... and a strong likelihood that the effect of the evidence would be 'devastating' to the [party]." Greer v. Miller, 483 U.S. 756, 766 n. 8 (1987).
 
 
 37
 Here, less than two hours after North's testimony was admitted, the judge instructed the jury that "[t]he decision to allow Officer North to testify was in error and her testimony, all of it, on direct and on cross-examination, is stricken. You must treat it as though you had never heard it." The District Court then conducted a voir dire of each juror to ensure that the testimony would be disregarded in its entirety. We will not infer that the jury did not or could not follow the court's clear instructions nor will we find that this evidence alone severely affected plaintiff's case.
 
 3. Misconduct of Counsel
 
 38
 Plaintiff asserts counsel misconduct. It is unclear against whom this allegation is made and for what conduct. Additionally, plaintiff did not assert this claim before the District Court. Without more, we cannot consider this claim on appeal.
 
 4. Jury Instructions
 
 39
 In his brief on appeal, plaintiff alleges error in the jury instructions but does not assert any specific objections. Defendant contends that the issue is whether the District Court erred in not instructing the jury that it could award nominal damages. We have already addressed this issue. However, in one of plaintiff's post-trial motions, he argued, through his then-counsel, that defendant "erroneously focus[es] on the absence of a nominal damages instruction" as justification for the no damages award. Instead, plaintiff asserted that it was the court's failure to admit his suggested "limiting instruction" that caused the verdict. Specifically, plaintiff requested that the court inform the jury that evidence of what happened during the course of the incident was admitted solely on the issue of punitive damages. The District Court found that it did not err in not giving such an instruction because the jury could properly consider the entirety of the events in order to determine the cause of the injuries for which plaintiff sought compensation.
 
 
 40
 "A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." Bowman v. Koch Transfer Co., 862 F.2d 1257, 1263 (6th Cir.1988). We agree that the evidence presented regarding the totality of the event was necessary in order for the jury to determine whether plaintiff had satisfied his burden of proving that defendant's use of excessive force had caused compensable damage. To the extent that the jury could have determined that defendant's conduct did cause damage, the evidence enabled the jury to determine which injuries were caused by defendant as opposed to the other officers or plaintiff himself. In sum, the court's failure to give a limiting instruction as requested by the defendant was not in error.
 
 5. Inadequate Damages
 
 41
 We find that our discussions in Parts B and C.1 adequately address the issue of damages in this case. Because we find that the jury could reasonably have found that defendant's unconstitutional actions did not cause plaintiff's injuries and that the clear weight of the evidence does not suggest otherwise, the jury could not award damages.
 
 III.
 
 42
 For the foregoing reasons, we AFFIRM.
 
 
 
 *
 The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 By the time the case went to trial, plaintiff had filed a Third Amended Complaint which sought $10,000,000 in compensatory damages and $10,000,000 in punitive damages
 
 
 [2]
 The Ninth Circuit has held that nominal damages must be awarded if a plaintiff proves a violation of his constitutional rights. See George v. City of Long Beach, 973 F.2d 706, 708 (9th Cir.1992). This is not the law of this Circuit
 
 
 [3]
 Because of the pro se nature of this case, defendant in his brief makes a couple of arguments addressing issues which we do not think plaintiff is raising on appeal. We therefore decline to address these issues