NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0104n.06

No. 24-1098

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

DWAYNE SEALS,

  Plaintiff-Appellee,

v.

WAYNE COUNTY, MICHIGAN,

  Defendant,

WAYNE COUNTY EMPLOYEES' RETIREMENT
SYSTEM,

  Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Feb 25, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

_____

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

KETHLEDGE, Circuit Judge. Dwayne Seals sued Wayne County and the Wayne County Employees' Retirement System for allegedly retaliating against him, in violation of the First Amendment, after he publicly criticized the System's method of calculating pension benefits. Seals won a jury verdict of $180,000. The System now appeals the district court's summary-judgment ruling, certain jury instructions, and various other rulings below. We affirm.

I.

Dwayne Seals worked for the Wayne County Commission for just under 11 years, before retiring in 2016. Then he began to draw a pension of about $5,400 per month. In 2017, Seals came out of retirement to serve as the Wayne County Deputy Register of Deeds—a position to which he was appointed by the Register of Deeds, Bernard Youngblood. Youngblood told Seals

he could come back to work full-time and continue to receive his pension benefits, under an exception to the "1000-hour rule" in the County Pension Plan Act. M.C.L. § 46.12a(28)(b)(i). That rule normally allows a retiree to return to work and continue to receive pension benefits if the retiree works no more than 1000 hours within a 12-month period; but certain appointed positions are exempt from this limit. *Id.* Seals's new job under Youngblood qualified for this exception, so he could work full-time without losing his pension.

After Seals returned to work, he began to raise concerns to the Wayne County Employees' Retirement System that it was calculating his and other retirees' pensions incorrectly. In April 2017, however, Youngblood told Seals to stay quiet about the pension dispute because it was affecting the relationships in his department. Seals did not raise the issue again until after May 2019, when he left the Register of Deeds. In July 2019, the Wayne County Clerk, Cathy Garrett, appointed Seals as her Deputy Clerk and Financial Officer. Garrett confirmed with Wayne County's human-resources department that Seals could continue to work full-time while receiving his pension in this new position, just as he had at the Register of Deeds.

Soon after he started his new job, Seals began to attend the System's public meetings, where he alleged that the System was "cheating" him and other retirees out of their full pensions. Many of the System's board members were upset by Seals's accusations. In a closed-door meeting in September 2019, members of the board learned that Seals had changed jobs—and they decided to investigate whether Seals's new job was exempt from the 1000-hour rule. One board member, Betty Misuraca, reportedly said after the decision: "That will keep him quiet." Misuraca then told a fellow board member that, if Seals did not stop commenting publicly about the pension dispute, she would "end his career."

At the board's request, an attorney for Wayne County investigated Seals's new position and concluded that it was not exempt from the 1000-hour limit for reemployed retirees. In January and February 2020, Wayne County's human-resources director told Seals that his working hours were approaching the limit, and that he would lose his pension if he continued to work. Seals continued to work past the 1000-hour limit, and the System suspended his pension benefits.

Seals later filed this suit under 42 U.S.C. § 1983, alleging that Wayne County and the System had conspired to retaliate against Seals for his speech, in violation of his First Amendment rights. The defendants filed motions to dismiss, which the district court denied. After discovery, the defendants moved separately for summary judgment. The court denied the System's motion but granted Wayne County's motion. The case was later reassigned to a different district judge, who made several rulings on motions in limine and on jury instructions. After a six-day trial, the jury entered a verdict in Seals's favor. This appeal followed.

II.

A.

i.

We review the court's grant of summary judgment de novo. *Boulton v. Swanson*, 795 F.3d 526, 530 (6th Cir. 2015).

To prevail on a First Amendment retaliation claim, a plaintiff must prove three elements: namely, that his speech was constitutionally protected; that he was "subjected to some adverse action or deprived of some benefit"; and that his speech was a "substantial" or "motivating factor" for the adverse action. *Farhat v. Jopke*, 370 F.3d 580, 588 (6th Cir. 2004). Here, the district court held as a matter of law that Seals had satisfied the first two elements—that Seals's speech was protected, and that the System had taken an "adverse action" against him.

As an initial matter, the System argues that the district court improperly granted summary judgment "sua sponte" to Seals when—in its order denying the System's motion for summary judgment—the court held that Seals had satisfied the first two elements of his claim. A district court may enter summary judgment to a nonmoving party so long as the losing party was "on notice that it had to come forward with all of its evidence," and it had a "reasonable opportunity to respond to all the issues to be considered by the court." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Tr. Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

Here, the System asked the court to grant summary judgment in its favor on all three elements, and submitted over 1000 pages of exhibits to support its argument. The System responded to Seals's arguments in its reply brief. Moreover, two questions posed by the System's motion were binary: Seals's speech either was protected by the First Amendment or was not; and the System's decision to suspend Seals's pension was an adverse action or was not. The court's decision on these issues therefore was not sua sponte. To the contrary, the court answered questions the System itself had presented. Hence the court did not abuse its discretion in deciding them. *See, e.g.*, *In re Century Offshore Mgmt. Corp.*, 119 F.3d 409, 412 (6th Cir. 1997).

As for the merits, the System first challenges the court's holding that Seals's speech was protected under the First Amendment. A court determines as matter of law whether a public employee's speech is constitutionally protected. *See Mayhew v. Town of Smyrna, Tenn.*, 856 F.3d 456, 464 (6th Cir. 2017). To be protected, the employee must have spoken as a "private citizen" and addressed a "matter of public concern." *Id.* at 462. A public employee speaks as a private citizen when his speech does not relate to his "official duties." *See Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Here, Seals's job was to oversee financial records at the Wayne County Clerk's

office—which had nothing to do with employee pensions. When he spoke about pension calculations, therefore, he did so as a private citizen.

Speech addresses a public concern, in turn, when it relates to "any matter of political, social, or other concern to the community," or when it is a "subject of general interest." *Lane v. Franks*, 573 U.S. 228, 241 (2014). And when speech addresses both private and public concerns, we look to the speaker's "primary focus." *Farhat*, 370 F.3d at 592. Here, in an October 2019 email to the System's board, Seals said:

> Because of [the System's] willful decision not to follow retirement plans and the retirement ordinance, this has resulted in my retirement distributions being $38 (pre-tax) a month less than what it should be. Although I'm not concerned with this shortage because it will not have a significant bearing on my life, I am, however, concerned about the hundred[s] of retirees that [the System] is cheating because of [its] inability to differentiate monthly average from yearly average.

This statement shows that Seals was less concerned with his own pension than he was with the pensions of the other retirees whom he said the System was "cheating." His primary focus, then, was on the general interest of all Wayne County pensioners—which means his speech addressed a matter of public concern.

When a public employee's speech addresses a public concern, we must then balance his interest in the speech against the state employer's interest in performing public services efficiently. *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 568 (1968). This test protects the right of the government employer to deal with "disruption in the workplace." *Farhat v. Jopke*, 370 F.3d 580, 594 (6th Cir. 2004). Here, Seals spoke during public-comment periods at the System's meetings, and he sent emails to members of the System's board. The System has not provided any evidence that Seals's comments disrupted his workplace or impeded any government functions. Hence the System has not shown it had any legitimate interest in silencing Seals—which means his speech was protected under the First Amendment.

The System also challenges the court's holding that the System took an adverse action against Seals. A loss of pay—regardless of the form it takes—is an adverse action. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 710-11 n.6 (6th Cir. 2007). Here, the System concedes that it terminated Seals's pension payments, which resulted in a loss in Seals's income of about $5,400 per month. That was an adverse action. *See Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 304 (6th Cir. 2012).

The System counters that it terminated Seals's pension not because of his speech, but based on legal advice from Wayne County's in-house counsel. But that argument goes to causation, which is the third element of Seals's claim. The district court was therefore correct to rule for Seals on the first two elements of his First Amendment claim as a matter of law, and to leave causation for trial.

ii.

The System also challenges a related ruling: namely the court's grant of a motion in limine to bar the System from asserting at trial that Seals had not established the first two elements of his First Amendment claim. The court granted that motion on the ground that its earlier grant of summary judgment to Seals, as to those elements, was the law of the case. *See generally Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002).

The System's argument, specifically, is that in granting summary judgment the district court merely reiterated its earlier reasoning when it denied the System's motion to dismiss this claim; and the standards governing each motion, the System says, are different. That last point is true enough. But the System's arguments (as to these two elements) on summary judgment were substantively the same as its arguments in support of the motion to dismiss. And the relevant facts at each stage (notwithstanding the different manner in which the court was required to view them)

were no different either. The court therefore did not abuse its discretion when it recognized its summary-judgment decision as law of the case, and thus granted the motion in limine. *See Daunt v. Benson*, 999 F.3d 299, 308-09 (6th Cir. 2021).

B.

The System argues that the court's jury instructions misstated the law as to causation. Specifically, the System says that Instruction #18 did not require the jury to find that the System acted with a retaliatory motive, and that it placed too much emphasis on "but-for" causation. We will remand for a new trial only if the instructions were legally inaccurate or misleading. *Hurt v. Com. Energy, Inc.*, 973 F.3d 509, 523 (6th Cir. 2020).

A plaintiff who brings a retaliation claim under the First Amendment must show that his speech was a "but-for" cause of an adverse action. *Lemaster v. Lawrence Cnty.*, 65 F.4th 302, 309 (6th Cir. 2023). Our caselaw provides that—when the plaintiff is a public employee—the plaintiff must first show that his speech was "a substantial or motivating factor" in the adverse action. *Id.* If the plaintiff does that, the defendant must then show that it would have taken the same action even absent the plaintiff's speech. *Id.* And here, suffice it to say, the court's instruction tracked this framework almost verbatim. *See* Jury Instr. #18. So we reject this argument.

The System next argues that the court should have adopted its proposed jury instructions on mitigation and nominal damages. We review that decision for an abuse of discretion. *Williams v. Eau Claire Pub. Sch.*, 397 F.3d 441, 445 (6th Cir. 2005). Specifically, the System says Seals could have found another job that was exempt from the 1000-hour rule, which would have mitigated his damages. But the System presented no evidence that Seals could have found such a job—which means the proposed instruction would have only confused the jury. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007).

Nor, for similar reasons, was the court required (as the System argues here) to instruct the jury that—if it found the System liable—it could yet find that Seals lacked any damages. To establish liability, Seals needed to show an adverse action—which here was termination of his pension. And the parties stipulated that Seals's pension was paying him about $5,400 per month when the System terminated it. Proof of liability thus included proof of damages—so the court was right to reject this instruction. *See Ealy v. City of Dayton*, 103 F.3d 129 (6th Cir. 1996).

\*      \*      \*

We reject the remainder of the System's arguments for substantially the reasons stated by the district court. The court's judgment is affirmed.