**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Hussein RAHAL (95–2341) and Haidar Rahal (95–2342), Defendants– Appellants.**

**Nos. 95–2341, 95–2342.**

United States Court of Appeals, Sixth Circuit.

Argued: June 17, 1999

Decided and Filed: Sept. 13, 1999

* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation.

Jonathan Tukel (argued and briefed), Office of the U.S. Atty., Detroit, MI, for Plaintiff–Appellee.

Richard L. Knickerbocker (argued and briefed), Knickerbocker Law Corporation, Los Angeles, California, W. Merrill Davidson, Los Angeles, California, for Defendants–Appellants.

Before: KRUPANSKY, RYAN, and SUHRHEINRICH, Circuit Judges.

KRUPANSKY, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. RYAN, J. (p. 647), delivered a separate opinion concurring in the judgment.

## OPINION

KRUPANSKY, Circuit Judge.

Defendants–Appellants Hussein Rahal and Haidar Rahal were middlemen in a miscarried contract killing of an individual who was to testify against figures in a heroin conspiracy in which Defendants–Appellants participated. The attempted murder took the life of a bystander. Defendants–Appellants entered guilty pleas to charges of Conspiracy to Distribute Heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and Conspiracy to

Murder a Federal Witness, in violation of 18 U.S.C. §§ 371 and 1512. Both defendants have charged three assignments of error on direct appeal. They have challenged the effectiveness of their trial counsel; the application of U.S.S.G. § 3D1.2 to group their convictions as closely related; and the sufficiency of the district court's investigation into challenged facts utilized in determining their sentence.

A review of the facts in the case reveals that on September 9, 1992, while cooperating with the F.B.I., Hassan Cheaib sold one kilogram of heroin to Ibrahim Hourani (Hourani will be referred to as "Ibrahim," to avoid confusion with his son, "Dani"). The F.B.I. immediately arrested Ibrahim and, to protect his identity, arrested Cheaib. Later, an affidavit which disclosed Cheaib as an FBI informant was inadvertently filed unsealed in the United States District Court. When members of the heroin conspiracy obtained a copy, their suspicion that Cheaib was an informant was confirmed.

Ibrahim's son, Dani Hourani, recognized that Cheaib had "set up his father with the heroin" and believed that the government could not develop a convincing prosecution against his father without Cheaib as a witness. Dani solicited Haidar and Hussein Rahal, whose drug distribution system he supplied, to contract Cheaib's murder, for which Dani agreed to cancel a $10,000 drug indebtedness Haidar had accrued for previous deliveries of heroin from Dani. (For convenience, the brothers will be referred to individually as "Haidar" and "Hussein," and collectively as "the Rahals.")

Haidar enlisted the services of Todd Harris who, in turn, subcontracted the murder to an individual identified only as Junior. Harris provided Junior with an advance payment of $1,000 and a pager to permit direct communication with Haidar when the latter located Cheaib. Unfortunately, Junior vanished with the pager and the $1,000 without pursuing the murder contract.

Thereafter, Haidar paid Harris an additional $1,000 to find a replacement to murder Cheaib. Harris contacted Tony Owens. While Haidar did not know the name or identity of the new recruit, Harris had advised Haidar that the newly enlisted "hitman" could be contacted through a pager he, Harris, had furnished to the assassin.

On December 2, 1992, after the Rahal brothers had determined the whereabouts of Cheaib in the Dearborn, Michigan area, Haidar relayed Cheaib's location to Owen via the telephone pager. Owens confirmed that he would carry out the murder that day.

Owens found Cheaib at his residence, where he was with a man named Mohamed "Booty" Biri. As the two walked from the house toward Cheaib's car, another vehicle approached erupting a fusillade of gunfire. Biri was fatally wounded. Cheaib escaped while the gunman drove away.

That same evening, Harris spoke to Haidar, informing him that Owens demanded payment despite the escape of the target of this assassination. Haidar relayed this information to Dani, who eventually agreed to pay Owens "some" of the money. Haidar gave Harris $5,000, which Harris delivered to Owens.

After the Rahal brothers were arrested, Hussein retained an attorney to defend him and to conduct his plea negotiations. Haidar was represented, with court approval, by a lawyer who shared office space within a suite occupied by a partnership of attorneys in which Hussein's legal counsel was a partner. The record disclosed no documentation of a conflicting interrelationship between the two defense counsel.

Both Rahal brothers entered plea agreements whereby they would receive reduced sentences in exchange for testimony against other members of the drug and murder conspiracies. Following guilty pleas to the charges of conspiracy to dis-

tribute heroin and conspiracy to murder a federal witness, the district court sentenced Haidar to 144 months' imprisonment for Conspiracy to Distribute Heroin plus a concurrent 60 months' confinement for Conspiracy to Murder a Federal Witness. Hussein incurred 84 months' imprisonment for Conspiracy to Distribute Heroin and a concurrent 60 months' term for Conspiracy to Murder a Federal Witness. The sentences for the heroin conspiracy were derived from the Sentencing Guidelines providing for grouping closely related offenses. The sentences were consistent with the Rahals' plea bargain agreements. Hussein and Haidar filed timely notices of appeal. This panel invokes jurisdiction under 28 U.S.C. § 1291.

Haidar and Hussein each charged three assignments of error on appeal: whether they were denied effective assistance of counsel by virtue of the relationship between their respective defense counsel; whether the district court erred in grouping their convictions as closely related crimes; and whether the district court erred by failing to conduct a searching inquiry into disputed underlying facts which formed the basis of the pleas.

■ A charge of "ineffective assistance of legal counsel" is not generally cognizable on direct appeal. *See United States v. Tucker,* 90 F.3d 1135, 1143 (6th Cir.1996). It is appropriate on direct appeal only when the record is adequate to assess the merits of the defendants' allegations. *United States v. Kincaide,* 145 F.3d 771, 785 (6th Cir.1998). Claims of ineffective assistance of counsel are more properly available in a post-conviction proceeding under 28 U.S.C. § 2255, after the parties have had the opportunity to develop an adequate record on the issue from which the reviewing court is capable of arriving at an informed decision. *United States v. Seymour,* 38 F.3d 261, 263 (6th Cir.1994).

■ The United States Supreme Court defined the standard for reviewing charges of ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) mandating that a criminal defendant must prove that his counsel's performance was deficient and that the ineffective assistance of his counsel prejudiced his defense in a manner which deprived him of a fair trial. Consequently, in the instant case, where the defendants were convicted as a result of guilty pleas defendants must prove both that an actual conflict of interest existed and that the conflict adversely affected the voluntary nature of their respective guilty pleas. *See Thomas v. Foltz,* 818 F.2d 476, 480 (6th Cir.1987).

■ For this forum to find a conflict of interest, Appellants must:

> point to "specific instances in the record to suggest an actual conflict or impairment of their interests." Appellants must make a factual showing of inconsistent interests *and must show that the attorney "made a choice between possible alternative courses of action,* such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. *If he did not make such a choice, the conflict remained hypothetical."* ... There is no violation where the conflict is "irrelevant or merely hypothetical" there must be an "actual significant conflict."

*Thomas,* 818 F.2d at 481 (quoting *United States v. Mers,* 701 F.2d 1321, 1328 (11th Cir.1983) (emphases added)).

■ The Rahals have asserted that the dual representation afforded them *per se* voided their right to remain silent. However, "[t]his court specifically has rejected a per se rule as to conflicts of interest and requires proof of an actual conflict." *Taylor v. United States,* 985 F.2d 844, 846 (6th Cir.1993). They have identified no persuasive evidence in the record to satisfy the dictates of *Thomas.* Absent record evidence of actual conflict of interest, the ineffective assistance of counsel claim should be litigated in a 28 U.S.C. § 2255 action.

The Rahals have also challenged the grouping of the criminal offenses that anchored their convictions as closely related for the purposes of determining their sentences. The court reviews a district court's legal conclusions regarding the Sentencing Guidelines *de novo*. *United States v. Garner*, 940 F.2d 172, 174 (6th Cir.1991) A district court's application of the Sentencing Guidelines involving mixed questions of law and fact are also reviewed *de novo*. *See U.S. v. Mills*, 1 F.3d 414, 421 (6th Cir.1993).

■ Under the Sentencing Guidelines, the Base Offense Level for Count 1 of the indictment, *Conspiracy* to Kill a Federal Witness, is 43. U.S.S.G. § 2A1.5. However, the Base Offense Level of 43, which invokes a sentence of life imprisonment, is circumscribed by the statutory maximum imposed by 18 U.S.C. § 371, which limits imprisonment to only five years for Conspiracy to Commit a Federal Offense or to Defraud the United States. 18 U.S.C. § 371. When, as in the instant action, the maximum statutorily authorized sentence is less than the minimum sentence imposed by the Sentencing Guidelines, the statutorily authorized maximum shall be the guideline sentence. U.S.S.G. § 5G1.1(a).

The statutory sentence for Count 4, Conspiracy to Distribute Heroin, however, is at least four years. 21 U.S.C. § 841(b)(1)(B). The U.S.S.G. Base Offense Level for conspiracy to distribute the amount of heroin the Rahals admitted to distributing is 26, meriting a sentence of 63–78 months for the Class I criminal history Haidar and Hussein share. However, under U.S.S.G. § 3D1.3(a), when multiple criminal counts are closely related, the highest offense level of the counts within the group determines the Base Offense Level for the group. U.S.S.G. § 3D1.3(a). Utilizing § 3D1.3 results in a Base Offense Level of 43 for Count 4.

■ U.S.S.G. § 3D1.2 commands that

*"All counts involving substantially the same harm shall be grouped together into a single Group." Counts involve substantially the same harm within the meaning of this rule*:

(a) When counts involve the same victim and the same act or transaction.

(b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

U.S.S.G. § 3D1.2 (emphases added). The victim of the conspiracy to murder a federal witness was Biri. The interest of society generally to regulate the sale of controlled substances was the victim of the conspiracy to distribute heroin. *See* U.S.S.G. 3D1.2, comment (n.2). The Commentary to the provision makes it clear that in the instant case, as it involves separate victims, the convictions can be joined under U.S.S.G. § 3D1.2(c). *See* U.S.S.G. § 3D1.2 comment (backg'd). Thus, grouping a conspiracy to distribute heroin under U.S.S.G. § 3D1.2(c) with a conspiracy to murder a federal witness requires, as a condition precedent, treating the murder conspiracy "as a specific offense characteristic in, or other adjustment to" the conspiracy to distribute heroin, which, it appears, was not done by the sentencing judge in the instant case.

However, the conspiracy to murder a federal witness constituted an obstruction of justice which was inextricably entangled with the conspiracy to distribute heroin and should have been applied as an adjustment to the latter offense. Under U.S.S.G. § 3C1.1:

If the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution, or

sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The Commentary provides "a non-exhaustive list of examples of the types of conduct to which this enhancement applies" which includes "conduct prohibited by 18 U.S.C. §§ 1501–1516." U.S.S.G. § 3C1.1, comment (n.3(i)). Murder of a federal witness is conduct prohibited by 18 U.S.C. § 1512. Accordingly, both Hussein's and Haidar's sentences should have been increased by two levels for obstruction of justice. However, in light of the Government's motion for a downward departure according to U.S.S.G. § 5K1.1, and the court's acceptance of that request, failure to apply the adjustment constituted harmless error. In an effort to place this appellate review in context, the court's inquiry must continue to determine if the convictions were properly grouped under U.S.S.G. § 3D1.2(c) had the adjustment been correctly applied.

The Fourth Circuit has defined relevant criteria for grouping multiple offenses pursuant to U.S.S.G. § 3D1.2(a)-(c) to include:

> the duration of the defendant's conduct and whether the conduct of conviction overlaps in time, the locations in which the conduct occurs, the persons involved, the means used to accomplish the criminal purpose, and the separateness of the fear and risks of harm created by the defendant's multiple acts. No specific factor should control; the district court is to weigh them as the facts and circumstances of the individual case require.
>
> Whether or not offenses are connected by a common criminal objective is also a critical determination.

*U.S. v. Pitts*, 176 F.3d 239, 244 (4th Cir. 1999).

■ As developed by the record of evidence in the instant case, the conspiracy to distribute heroin was on-going and interrelated with the conspiracy to murder a federal witness. The persons involved were members of the drug conspiracy. Money from the drug conspiracy was used to pay for the conspiracy to murder a federal witness. The objective of the conspiracy to murder a federal witness was to avoid prosecution and was further intended to allow the drug conspiracy to continue.

Other circuits have judged a conspiracy to conceal a separate and distinct contemporaneous on-going conspiracy to be properly grouped with the underlying conspiracy even though the two conspiracies involved separate victims. *See, e.g., United States v. Coleman,* 138 F.3d 344, 349 (8th Cir.1998). Accordingly, assuming that the district court had applied the U.S.S.G. § 3C1.1 adjustment, the two conspiracies in the instant case were properly grouped.

The court, having reviewed and considered the remaining assignment of error, concludes that it is not well taken and without merit. Accordingly, the decision of the district court is **AFFIRMED**.

RYAN, Circuit Judge, concurring.

My brother's opinion for affirmance reaches an eminently correct result; and therefore, I concur in the judgment for affirmance.