**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Curtis W. RIPPY (00–5583), Danny W. Rippy (00–5584), Defendants–Appellants.**

**Nos. 00–5583, 00–5584.**

United States Court of Appeals,
Sixth Circuit.

March 19, 2002.

Before RYAN, BOGGS, and DAUGHTREY, Circuit Judges.

RYAN, Circuit Judge.

The defendants, Curtis W. Rippy and Danny W. Rippy, appeal a number of issues arising from their federal convictions for the interstate transport of stolen motor vehicles and operation of a stolen vehicle "chop shop." For the reasons set forth below, we will affirm the conviction and sentence of Danny Rippy. We also affirm the conviction of Curtis Rippy, but because we find that the district court improperly enhanced Curtis Rippy's sentence pursuant to U.S.S.G. § 2B6.1(b)(2), we vacate his sentence and remand his case to the district court for resentencing.

### I.

Curtis Rippy and Danny Rippy are brothers convicted for their roles in the operation of a stolen vehicle "chop shop," located in Franklin, Kentucky. The plan operated with the aid of coconspirator Charles Cummings, who would steal the vehicles and transport them to Danny Rippy at his business, Rippy's Auto Repair. After receiving the stolen vehicles from Cummings, Danny Rippy would enlist the aid of his brother, Curtis, and the brothers would remove and replace the vehicle identification numbers (VINs). Danny Rippy would then attempt to sell or exchange the property. The brothers lived and worked on a 60–acre farm that housed the repair shop, Curtis's trailer, Danny's home, and the home of the brothers' parents.

At a trial held in November 1999, the brothers were convicted under a multiple-count indictment. Specifically, Curtis Rippy was convicted of the following: conspiracy to transport stolen motor vehicles across state lines, in violation of 18 U.S.C. § 371 (Count 1); and trafficking in motor vehicles and motor vehicle parts with altered VINs, in violation of 18 U.S.C. § 2321 (Counts 11–14, 17). Danny Rippy was convicted of 15 counts in the indictment, including: conspiracy to transport stolen motor vehicles across state lines, in violation of 18 U.S.C. § 371 (Count 1); trafficking in motor vehicles and motor vehicle parts with altered VINs, in violation of 18 U.S.C. § 2321 (Counts 11–19); possession of stolen merchandise valued at over $5,000 which crossed state bound-

aries, in violation of 18 U.S.C. § 2315 (Counts 23–25); transport of stolen merchandise in interstate commerce with a value over $5,000, in violation of 18 U.S.C. § 2315 (Count 26); and operating a chop shop, doing business as Rippy's Auto Repair, in violation of 18 U.S.C. § 2322 (Count 27).

## II.

Curtis Rippy and Danny Rippy appeal both their convictions and their sentences. We first address their arguments regarding their convictions and then turn to the arguments regarding the district court's application of the United States Sentencing Guidelines.

### A. Sufficiency of the Conspiracy Evidence

■ Both Rippys argue that the evidence adduced at their joint trial was insufficient to sustain their conspiracy convictions pursuant to 18 U.S.C. § 371. Curtis Rippy argues that his participation in the scheme is properly considered aiding and abetting, not conspiracy. In support, he notes that Danny Rippy retained all the money from the operation and that he, Curtis, was only an employee of the shop. Danny Rippy contends that no rational trier of fact could have found the essential elements of conspiracy beyond a reasonable doubt. Notably, he confines his argument to a single sentence and fails to advance any specific reasoning.

In reviewing claims for sufficiency of the evidence to support a conviction, we review the record in the light most favorable to the prosecution. *United States v. Abner*, 35 F.3d 251, 253 (6th Cir.1994) (citing *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). A conviction will be upheld so long as any rational juror could have concluded that there is adequate evidence to support the

verdict. *Jackson*, 443 U.S. at 319. " 'The government must be given the benefit of all inferences which can reasonably be drawn from the evidence ... even if the evidence is circumstantial.' " *United States v. Leal*, 75 F.3d 219, 222 (6th Cir. 1996) (quoting *United States v. Adamo*, 742 F.2d 927, 932 (6th Cir.1984)).

Under 18 U.S.C. § 371, the government must prove:

"(1) [that] the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one overt act charged in the indictment at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged."

*United States v. Brown*, 147 F.3d 477, 489 (6th Cir.1998) (citation omitted).

Neither Curtis Rippy nor Danny Rippy advances argument or evidence sufficient to overturn their convictions. A careful examination of the evidence reveals that Curtis Rippy altered the VINs on at least the following vehicles: a 1988 GMC pickup (Count 11); a 1991 Chevrolet stepside pickup (Count 12); a 1996 Chevrolet Z–71 pickup that Curtis used for his personal transportation (Count 13); a 1994 GMC short-bed pickup (Count 14); and a 1994 Dodge Ram pickup being driven by the Rippys' father (Count 17). When asked by his brother to alter VINs, which was critical to preparing the stolen vehicles for resale, Curtis Rippy obliged. His conduct demonstrates that he willfully agreed to participate in the scheme and knowingly furthered the ultimate ends of the conspiracy. Therefore, a rational juror could have reasonably concluded that there was

adequate evidence to support Curtis Rippy's conviction of conspiracy.

Danny Rippy's argument is utterly meritless. As the owner of the "chop shop," he was the key member of the scheme to steal, alter, and resell vehicles. The jury had ample evidence with which to convict him of conspiracy.

## B. Ineffective Assistance of Counsel

■ Danny Rippy next argues that his trial counsel's performance denied him effective assistance of counsel as guaranteed by the Sixth Amendment. In particular, he argues that his attorney failed to call any witnesses on his behalf and failed to interview a number of potential defense witnesses. Danny Rippy's brief alleges that his attorney urged him to accept a Fed.R.Crim.P. 11 plea agreement, and when Rippy declined to do so, his attorney was woefully underprepared for the trial.

An ineffective assistance of counsel claim is generally not cognizable on direct appeal because the court lacks an adequate factual record. *United States v. Rahal*, 191 F.3d 642, 645 (6th Cir.1999); *United States v. Snow*, 48 F.3d 198, 199 (6th Cir. 1995). Instead, these claims are more properly brought in a motion to vacate under 28 U.S.C. § 2255 after the parties have had the opportunity to develop the record fully. *Rahal*, 191 F.3d at 645. However, if the record is developed sufficiently to allow the court to evaluate the counsel's performance, this court will consider an ineffective assistance claim on direct appeal. *Snow*, 48 F.3d at 199.

Upon review, it is clear that the record in this case is not adequate to properly review Danny Rippy's ineffective assistance claim. His bare assertions do not provide the court any facts with which to analyze his counsel's performance, nor can any be discovered from a review of the record. It is not clear why Danny Rippy's

counsel did not call witnesses, but the record does not support any inference that such inaction was prejudicial. For these reasons, we will not address the ineffective assistance of counsel claim.

At oral argument, Danny Rippy's appellate counsel noted that because his client's sentence will soon be completed, this court's review is his client's only opportunity to challenge his trial attorney's performance. Be that as it may, we are unable to examine that which is not before us, and there is no record before us from which to determine the sufficiency of the performance of Danny Rippy's trial counsel. The Supreme Court defined the standard for reviewing charges of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and held that *a criminal defendant must prove* that his counsel's performance was deficient and that the ineffective assistance of his counsel prejudiced his defense. *Rahal*, 191 F.3d at 645. Stated simply, Danny Rippy has not offered any proof.

## C. Search Warrant

■ Danny Rippy next raises a Fourth Amendment challenge to the warrant-based search of his property. Danny Rippy's farm was searched pursuant to a warrant authorizing a search at 418 Loving Chapel Road, Danny Rippy's home. His repair shop is located at 408 Loving Chapel Road, and stolen cars observed at the shop were seized pursuant to the same search warrant. Danny Rippy contends that because the search warrant only authorized the search of "[a]ll buildings and structures located at 418 Loving Chapel Road," any vehicles seized from the repair shop at 408 Loving Chapel Road must be suppressed.

The Federal Rules of Criminal Procedure address the procedure for raising suppression issues. The rules provide that suppression motions "must be raised prior to trial." Fed.R.Crim.P. 12(b)(3). Furthermore, "Failure by a party to raise defenses or objections or to make requests which must be made prior to trial ... shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver." Fed.R.Crim.P. 12(f). "[F]ailure of counsel to object in a timely manner to the admission of evidence obtained in violation of the Fourth Amendment waives the right to have that evidence suppressed." *Watkins v. Kassulke*, 90 F.3d 138, 141–42 (6th Cir.1996).

Danny Rippy waived his right to raise his Fourth Amendment claim when he failed to make a timely objection pursuant to Fed.R.Crim.P. 12(b)(3). He does not point to any place in the record where the trial court considered argument regarding the sufficiency of the search warrant. He also fails to show any cause for this failure. Therefore, this claim must fail.

## D. *Apprendi* Error

■ Danny Rippy asserts that his conviction must be vacated in light of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). He argues that *Apprendi* holds that *any* fact that increases a defendant's maximum penalty must be charged in the indictment and proved beyond a reasonable doubt, and that the amount of loss attributable to his actions was determined under the preponderance of evidence standard. Therefore, he concludes, the amount of loss attributed to him, and which was subsequently used to enhance his sentence, should have been presented to the jury.

This argument is meritless. *Apprendi* holds that any fact that increases the penalty for a crime *beyond the statutory maximum*, other than prior conviction, must be determined by a jury beyond a reasonable doubt. 530 U.S. at 490. Danny Rippy was convicted of multiple counts of 18 U.S.C. §§ 371, 2315, 2321, and 2322. A violation of 18 U.S.C. § 2315 results in a statutory maximum of 10 years' imprisonment. The statutory maximum for 18 U.S.C. § 2321 is 10 years' imprisonment. Section 2322 has a statutory maximum of 15 years' imprisonment and 18 U.S.C. § 371 has a statutory maximum of five years' imprisonment. Therefore, for each conviction Danny Rippy received, the statutory maximum far exceeds the 24 months' imprisonment actually imposed. Therefore, there is no violation of *Apprendi.*

## E. Sentencing Guidelines

We first address the standard of review employed in Sentencing Guidelines cases. This court reviews *de novo* legal questions concerning the interpretation of the United States Sentencing Guidelines. *United States v. Robertson*, 260 F.3d 500, 506 (6th Cir.2001); *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir.2000). The district court's factual findings in applying the Guidelines are reviewed for clear error. *United States v. Butler*, 207 F.3d 839, 842 (6th Cir.2000).

### 1. Acceptance of Responsibility

■ Both Danny and Curtis Rippy contend that the district court improperly denied them an adjustment under the Guidelines for acceptance of responsibility. Danny Rippy argues that when confronted by the authorities, he cooperated fully. For instance, although Danny hid many of the vehicles with relatives when alerted to the imminent execution of the search warrant, he soon cooperated and led investigators to the stolen property. In addition, Danny Rippy met with the authorities on

numerous occasions and answered all of their questions.

Curtis Rippy contends that he was denied the acceptance of responsibility adjustment solely because he exercised his right to a trial. He notes that the Guidelines clearly state that a conviction by trial does not automatically preclude an individual from an offense-level reduction for acceptance of responsibility. Curtis Rippy claims that he went to trial to challenge Counts 15, 16, and 27 of the indictment, and that he was acquitted on all three counts. Furthermore, he contends that he went to trial to challenge the legal, not factual, sufficiency of Count 1, the conspiracy charge. Finally, Curtis Rippy claims that he admitted his conduct to the authorities immediately upon questioning; he withdrew from the conspiracy prior to March 1999; he assisted authorities in the recovery of goods; and he provided assistance well before trial.

"The determination of whether a defendant has accepted responsibility is a factual question for the district court which should be accorded great deference and should not be disturbed unless clearly erroneous." *United States v. Guthrie*, 144 F.3d 1006, 1011 (6th Cir.1998). According to the Guidelines, "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). Nevertheless,

> [t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. *In rare situations a defendant may clearly demonstrate an acceptance of responsi-*

*bility for his criminal conduct even though he exercises his constitutional right to a trial.* This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.,* to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, comment. (n.2) (emphasis added). The Application Notes state further that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment. (n.5).

Both Danny and Curtis Rippy put the government to its burden of proving its case at trial. Therefore, each defendant is entitled to a departure under the Guidelines only if his case presents one of the "rare situations" described in Application Note 2.

The trial court's determination that Danny Rippy's case was not a rare situation is not clearly erroneous. While Danny cooperated with the authorities when questioned, the Guidelines state that a defendant who puts the government to its burden is eligible for a departure only if he goes to trial to assert and preserve issues that do not relate to factual guilt. *See* U.S.S.G. § 3E1.1, comment. (n.2). This is not the situation in Danny's case because he continually questioned issues relating to his factual guilt. For instance, Danny Rippy's attorney advanced the argument that FBI Agent Richard Glenn could not verify the confessions given by Danny Rippy, and thus those confessions were sus-

pect. This was an attempt by his attorney to cast doubt on Danny Rippy's factual guilt, and the district court correctly excluded Danny Rippy from the exception.

Curtis Rippy is likewise not entitled to a two-level departure for acceptance of responsibility. Curtis Rippy continually disputed essential factual elements throughout the trial. His contention that he restricted his argument to a legal analysis of the conspiracy charge is belied by his attorney's closing argument. In his closing argument, Curtis Rippy's attorney disputed whether the factual evidence was sufficient to prove the substantive allegations and noted: "So we don't believe that there is sufficient evidence to find Curtis guilty of the remaining substantive counts, that being 11, 12, 14 and 17." Curtis Rippy's counsel conveniently ignored this argument at the sentencing hearing when he argued of his client, "He accepted everything." That assertion is not borne out by counsel's closing and demonstrates the validity of the district court's ruling.

Finally, there is other evidence demonstrating that Curtis Rippy did not accept responsibility under section 3E1.1. First, it is not clear that Curtis Rippy voluntarily withdrew from the conspiracy. There is evidence in the record that Curtis Rippy was "fired" from the conspiracy after a "falling out" with his brother that resulted in his eviction from his mobile home. Second, Curtis Rippy continued to drive a stolen pickup after he withdrew from the conspiracy, clearly evincing a failure to accept responsibility. Third, if Curtis Rippy truly accepted responsibility for the acts alleged in Counts 11–14, and 17, it is not clear why he did not plead guilty to those counts and restrict his argument to contesting the conspiracy charge at trial. For these reasons, we think the district court's determination is not clearly erroneous.

## 2. Mitigating Role

■ Curtis Rippy next argues that based on the Guidelines he qualifies for a sentencing adjustment due to his "minor" role in the conspiracy. Curtis admits that based on the Application Notes he played more than a "minimal" role in the conspiracy, but argues that he is less culpable than Cummings and his brother, and thus deserves a departure as a "minor" participant.

The defendant bears "the burden of proving mitigating factors justifying a reduction for being a minor participant by a preponderance of the evidence." *United States v. Miller,* 56 F.3d 719, 720 (6th Cir.1995). The district court's determination of mitigating role adjustments is reviewed for clear error. *United States v. Campbell,* 279 F.3d 392, 396 (6th Cir.2002). The Guidelines authorize a departure for participants who do not play a substantial role in the conspiracy:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a) If the defendant was a *minimal* participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a *minor* participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2 (emphasis added). The Application Notes direct that "[f]or purposes of § 3B1.2(b), a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, comment. (n.3).

This court has noted that "[t]he salient issue [in determining whether a defendant played a mitigating role] is the role the defendant played in relation to the activity for which the court held him or her accountable.'" *United States v. Roberts,* 223 F.3d 377, 380 (6th Cir.2000) (quoting *United States v. Roper,* 135 F.3d 430, 434 (6th Cir.1998)). The fact that a defendant may be described as being less culpable than his coconspirators does not automatically establish that he deserves a "minor participant reduction." *United States v. Jackson,* 55 F.3d 1219, 1225 (6th Cir.1995). Rather than possibly being less culpable than his own cohorts, the defendant's actions "must be compared with those of the average participant in a similar scheme." *Id.* The fact that others plan the activities of the conspiracy does not make the defendant a minor participant. *Miller,* 56 F.3d at 720.

Curtis Rippy's role in the conspiracy was not as active as that of his brother; nonetheless, he played a critical role. Curtis Rippy's contribution was to undertake the essential task of removing the VINs, which would obscure the fact that the vehicles were stolen. While it is true that Curtis Rippy appears to have operated on the instructions of his brother, it has not been alleged that when compared to a participant in a similar scheme, Curtis Rippy played a less substantial role. Instead, his counsel restricts his argument to the minor role Curtis Rippy played in this specific conspiracy. That is a mistaken analysis. When instructed to alter VINs, Curtis Rippy complied fully and filled that role completely. The district court's determination that Curtis Rippy is not entitled to a departure for a mitigating role is not clear error.

### 3. Being in the Business of Receiving and Selling Stolen Property

▪ Curtis Rippy argues that the two-level enhancement he received for being in the business of receiving and selling stolen property is only appropriate if the defendant is a "fence." He claims that when the jury acquitted him of Count 27, which accused him of controlling and operating a chop shop, by necessity it made a factual finding that he was not a fence. Curtis Rippy notes that the chop shop was operated by Danny Rippy under his exclusive control.

The government responds that under the reasoning advanced by Curtis Rippy, one would have to restrict the section 2B6.1(b)(2) enhancement to those instances where the defendant received an actual share of the profits. The United States argues that a "fence" is someone who receives stolen property, and Curtis Rippy received stolen property.

The Guidelines provide for a sentence enhancement "[i]f the defendant was in the business of receiving and selling stolen property...." U.S.S.G. § 2B6.1(b)(2). "A person in the business of receiving and selling stolen property is a person once referred to less flatteringly as a fence." *United States v. Warshawsky,* 20 F.3d 204, 214 (6th Cir.1994) (internal quotation marks and citation omitted). The Sentencing Commission has decided that fences deserve longer sentences because a sentence based solely on "'the amount of (stolen) property'" recovered by the police "'is likely to underrepresent the scope of their criminality and the extent to which [the defendant] encourage[s] or facilitate[s] other crimes.'" *Id.* at 215 (quoting U.S.S.G. § 2B1.2, comment. (backg'd)) (alterations in original).

An examination of the *Warshawsky* decision is instructive. In determining that the defendant deserved the two-level enhancement, the court found that he had "purchased tens of thousands of dollars of

stolen property and bestowed bountiful rewards on individuals willing to steal the property of others." *Warshawsky*, 20 F.3d at 215. Here, there is no evidence that Curtis Rippy ever made any purchase of stolen vehicles; nor has it ever been alleged or proved that Curtis Rippy sold a stolen motor vehicle. While Curtis Rippy did possess a stolen vehicle for his personal transportation, a fence possesses goods with an eye toward selling the stolen items. "The plain meaning of guideline § 2B6.1(b)(2) is that the defendant himself, and not just his co-conspirator, must have received and sold stolen property." *United States v. Maung*, 267 F.3d 1113, 1119 (11th Cir.2001). As has been discussed, Curtis Rippy's role was limited to the alteration of the vehicles' VINs. While that involvement places him squarely within the conspiracy, it does not establish him as a fence. The district court should not have given Curtis Rippy a two-level enhancement under section 2B6.1(b)(2). Therefore, we remand the sentence of Curtis Rippy to the district court for resentencing absent the two-level enhancement under section 2B6.1(b)(2).

### 4. Calculation of the Property Loss

■ Danny Rippy argues that the district court miscalculated the amount of loss that could be attributed to him for sentencing purposes. While the district court enhanced by seven Danny's offense level for loss between $120,000 and $200,000, Danny argues that the court failed to take into account that most of the vehicles were returned to their owners in good condition. Danny Rippy contends that the amount of actual loss from his actions is $83,910.43, which is the amount of restitution ordered by the court. He concludes that in calculating the amount of loss for which he was responsible, the court should have relied on the actual loss and not the fair market

value of the vehicles at the time they were stolen.

The Guidelines provide that "[i]f the retail value of the motor vehicles or parts involved exceeded $2,000, increase the offense level by the corresponding number of levels from the table in § 2F1.1 (Fraud and Deceit)." U.S.S.G. § 2B6.1(b)(1). Turning to that section, courts are instructed to consider specific offense characteristics in determining the amount of loss attributable to a defendant. For loss more than $120,000, but less than $200,000, courts are to enhance the offense level by seven. U.S.S.G. § 2F1.1(b)(1)(H). The Application Notes state that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, comment. (n.8). Application Note 8 directs courts to the commentary following section 2B1.1 for further directions on calculating loss. Turning to section 2B1.1 and its Application Notes:

> "Loss" means the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim.

U.S.S.G. § 2B1.1, comment. (n.2).

As the Guidelines state explicitly, the fair market value is the preferred measure of damages for section 2F1.1 purposes. Fair market value will not be used *only* if it is difficult to ascertain market value or it is an inadequate measure. In the case at hand, there is no reason to depart from fair market value. There is no doubt that Danny Rippy actively participated in a

scheme to steal, use, and resell vehicles valued at $144,053.66; he intended to inflict loss in excess of $120,000. That the actual loss to the victims was less than that figure is of no moment for purposes of sentencing.

### III.

For the foregoing reasons, we **AFFIRM** the conviction and sentence of Danny Rippy. We **AFFIRM** the conviction of Curtis Rippy; we **VACATE** his sentence and **REMAND** to the district court for resentencing of Curtis Rippy absent the two-level enhancement pursuant to U.S.S.G. § 2B6.1(b)(2).